[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1084 
This is an adoption case.
These proceedings commenced on April 8, 1977 when Bobby and Faye Worley filed a petition in the DeKalb County Probate Court seeking adoption of Mendy Michelle Jinks, an eighteen month old female child. It was alleged in the petition for adoption that the child had been abandoned by the father and that the latter's whereabouts was unknown. The mother of the child consented to the adoption and a temporary order was entered granting the Worleys custody. However, this order was conditioned upon the completion of an investigation by the DeKalb County Department of Pensions and Security (hereinafter referred to as DPS).
On August 11, 1977, based on statements made by John Kelvin Jinks, the purported father of the child, the District Court of DeKalb County, Juvenile Division, issued an ex parte order requiring the sheriff to take the child into custody and place her in the temporary care of DPS.
On August 16, 1977 the Worleys filed a petition for writ of habeas corpus in the Circuit Court of DeKalb County seeking to regain custody of the child. Their petition was premised on the theory that the child was being illegally restrained by DPS. Subsequently, DPS and the Jinkses requested that the writ be quashed. On August 31, 1977 DPS filed a petition in the district court, juvenile division, requesting that the court take jurisdiction of the matter and determine whether the child was dependent and needed further shelter care.
Then, on September 1, 1977, John K. Jinks filed petitions in the district court and the probate court respectively, asking that the adoption proceedings previously filed by the Worleys in the probate court be transferred to the district court. He also asked the circuit court to quash the habeas corpus petition filed in that court by the Worleys. Moreover, he requested that the circuit court give him permanent custody of the child.
On the same day, September 1, 1977, the district court held a hearing at which all parties and the attorneys who represented them entered into an agreement whereby DPS was to retain custody of the child pending a final hearing by the district court.
On September 29, 1977 the circuit court quashed the Worleys' petition for habeas corpus and transferred the proceeding to the district court, juvenile division, for disposition. Subsequently the adoption proceedings were transferred from the probate court to the district court and the district court entered a pre-trial order stating that the issue to be determined at the final hearing would be whether John K. Jinks, the natural father, had abandoned his child, Mendy Michelle Jinks.
The final hearing was held on October 31, 1977 and judgment was entered on November 3, 1977 finding that John Jinks had not abandoned his child. This appeal is from that judgment.
The evidence taken at the final hearing reveals the following pertinent facts.
John K. Jinks and Quindal Maltese were married on February 11, 1975. The parties lived together about six months before they separated. On February 10, 1976, while the couple was still separated, Mendy Michelle Jinks was born. The father visited the mother and the child in the hospital but he did not pay any of the hospital or medical bills resulting from the birth of the child. Shortly after the birth of the child the parties were reconciled and lived together for a short period of time. However, Quindal eventually left the father, taking the *Page 1085 
child with her. During the couple's second separation Quindal lived with another man.
While the parties were separated the father obtained physical custody of the baby from a friend of Quindal's with whom the latter had left the baby so that she could hitchhike to Florida with her paramour. John Jinks kept the baby about two weeks, and then returned her to his wife upon the wife's request.
On August 30, 1976 John Jinks again obtained physical custody of his daughter, Mendy Michelle. At the time he took her into his custody the baby was in poor health, unable to retain food and had flea bites on her body. John Jinks' sister, Nola Ham, helped him care for the child, and Mendy remained in the Ham household for about four months. During this time, according to the testimony, the child was restored to good health. On January 1, 1977 John Jinks and Quindal Jinks once again decided to live together as husband and wife. Their third effort at maintaining a marital relationship lasted approximately two weeks. At the end of this period John allowed the baby to be taken by a friend of Quindal's to visit the latter's grandmother in Dallas, Texas. At this time the Jinkses were living in Holly Beach, Louisiana. Quindal left the Jinkses' home without revealing her destination several days after the baby had been taken to Dallas. Following these events, John Jinks did not see his daughter again until he found her in DeKalb County, Alabama.
The evidence reveals that shortly after Quindal left John Jinks, she arrived in Dallas and started residing in a house with Charles Gregory and another man. Thereafter she again acquired physical custody of Mendy Michelle. However, in April of 1977 Quindal gave the child to Joe Gregory, a brother of Charles Gregory, for adoption. The Worleys subsequently obtained the child through the efforts of Ethel Manifold. Mrs. Manifold apparently had received the child from Joe Gregory. At any rate, Mrs. Manifold brought the child to Chattanooga, Tennessee where the Worleys took her. Adoption proceedings were commenced by the Worleys on April 8, 1977.
The testimony shows that from about the middle of January 1977 until August 11, 1977, John Jinks attempted to find his daughter. Upon learning that Joe Gregory had obtained his daughter and was thought to be living in Birmingham, Alabama, Jinks immediately went to Birmingham to try to locate his daughter. He finally found her in DeKalb County and sought the assistance of the district court, juvenile division, in recovering custody of his child. And, as stated earlier, he was ultimately successful in his efforts.
The appellants (Bobby and Faye Worley) state that the district court committed reversible error by: (1) transferring the adoption proceedings from the probate court to the district court; (2) entering the August 11 order taking the child from the Worleys and placing it in the care of DPS; (3) finding that the father, John Jinks, was entitled to custody of his daughter, Mendy Michelle; (4) admitting into evidence a certified copy of a decree of the Eleventh District Court of Louisiana, Sabine Parish, awarding temporary custody of Mendy Michelle Jinks to her father, John K. Jinks; and (5) admitting into evidence a report made to DPS by its Louisiana counterpart on the background of John K. Jinks and his sister and brother-in-law, Mr. and Mrs. Wayne Ham.
With regard to the transfer of the adoption proceedings from the probate court to the district court, the Worleys contend that the adoption by the people of constitutional amendment 364, which gave the probate court of each county ". . . general jurisdiction . . . of adoptions," effectively precluded the district court from acquiring jurisdiction of the adoption matter in the case at bar and from rendering a decision thereon. Ala. Const. of 1901, amend. 364.
Title 12, chapter 12, section 35, Code of Alabama 1975 provides in applicable part:
 "(a) Adoption proceedings, primarily cognizable before the probate court, may be transferred to the district court on *Page 1086 
motion of a party to the proceeding in probate court."
Since amendment 364 was adopted after the enactment of section 35, the Worleys argue that the amendment abolished whatever authority the district court had to hear and decide adoption matters.
As we perceive the Worleys' argument, they are saying that the grant to the probate court of general jurisdiction in adoption proceedings has the effect of giving that court "exclusive jurisdiction" over adoptions. However, the language of amendment 364 does not contain the word "exclusive"; instead, amendment 364 merely provides that the probate court shall have general jurisdiction in adoption matters.
In the case of State v. Sullivan, 95 Fla. 191, 116 So. 255,259 (1928), the Supreme Court of Florida said:
 "Two or more courts may have concurrent jurisdiction of the same subject-matter, and the rule is well settled that when the Constitution or the statute in specific terms vests jurisdiction in any tribunal without the qualifying term `exclusive,' or words of equivalent import, the Legislature may in its discretion vest the like jurisdiction in another court or tribunal."
Our constitutional amendment 364 does not have the qualifying word "exclusive" in it; consequently, we are of the opinion that that amendment did not give the probate court "exclusive" jurisdiction in adoption cases. Accordingly, the legislature had the authority to give the district courts the power to accept and decide adoption cases which have been transferred to it from the probate court. Title 12, chapter 12, section 35, Code of Alabama 1975.
In the case at bar the natural father, John Jinks, asked that the case be transferred to the district court. As a party to the dispute he was authorized by section 35 to make such a request. And upon receipt of Jinks' request the adoption proceedings were transferred from the probate to the district court for disposition. Thus, we find no error in the transfer of the proceedings from the probate court to the district court. However, in this instance it is to be noted that the probate court did not refuse to make this transfer.
The Worleys next contend that the district court's order of August 11, 1977 is erroneous in that the court had no authority to direct the sheriff to take the child, Mendy Michelle Jinks, and place her in the care of the DeKalb County DPS. The Worleys premise this contention on the ground that they received no summons apprising them of the fact that a hearing would subsequently be held to determine the custody of the child.
At the time the order was issued, the evidence shows that John Jinks appeared before the judge of the district court and related that he was the natural father of the child. He also informed the court that his wife had given the child away and that the child had been illegally removed from his custody. Moreover, he stated that he had traced the baby to DeKalb County, Alabama, and that he wanted her back.
On the strength of Jinks' allegations, the district court, juvenile division, entered an order holding that the child, Mendy Michelle, had been neglected and that her best interests required that the court take the child into its custody pending a hearing on the question of permanent custody. The court's order further directed that the sheriff proceed to the home of Joe Gregory, take physical custody of the child, and turn her over to the DeKalb County DPS for temporary care pending a final determination of the matters before the court.
On the strength of this order, the sheriff eventually found the child in the custody of the Worleys. The sheriff removed her from the Worleys' custody and placed her in the temporary care of DPS.
Subsequently, DPS petitioned the district court, juvenile division, to find that Mendy Michelle was a dependent child and in need of supervision; DPS also requested that the proper custodian of the child be ascertained.
Based on the petition filed by DPS, the district court, in the presence of the attorneys who represented the parties, found *Page 1087 
that Mendy Michelle had been brought into Alabama for adoption in violation of Title 49, section 84 (15), Code of Alabama 1940 (Recomp. 1958) (currently found in Title 38, chapter 7, section 15, Code of Alabama 1975). The court held further that the child was dependent and that she was to remain with DPS pending a final determination of the questions before the court. This action was taken on September 1, 1977 and an order placing the child in the temporary custody of DPS was entered on that date.
On October 19, 1977 the Worleys filed an objection to the September 1 order of the district court. They complained that neither they, as prospective adoptive parents, nor the child had been issued a summons or notice apprising them of the proceedings held on that date and, consequently, that the district court had no authority to issue the order of September 1, 1977. Moreover, they claimed that the absence of the issuance of a summons rendered invalid the court's August 11 order directing the sheriff to seize the child.
In urging that the district court's orders of September 1 and August 11 were invalid, the Worleys apparently rely on Title 12, chapter 15, sections 53 and 56, Code of Alabama 1975. Section 56 (1) permits a child to be taken into custody pursuant to a court order provided the court has acted in compliance with section 53 (a). Section 53 (a) requires that the court direct the issuance of a summons to any party necessary to the custody proceedings, including parents, guardians or other custodians of the child. The issuance of the summons mandates that the necessary parties appear before the court and respond to any allegations made in the petition seeking custody.
However, sections 56 (1) and 53 (a) are not the only statutory provisions whereby a child may be removed from the physical custody of an interested party. Title 12, chapter 15, section 56 (8), Code of Alabama 1975 provides:
"A child may be taken into custody:
. . . . .
 "(8) By a law enforcement officer pursuant to an order of the court directing that a child be taken into custody pending hearing on allegations that the child is suffering from illness or injury or is in immediate danger from his surroundings and ordering that the child's immediate removal from such surroundings is necessary for the protection of the health and safety of such child."
We believe that the allegations presented by John Jinks to the district court on August 11, 1977 were sufficient for the court to act under section 56 (8) and order the child removed from the custody of the Worleys pending a hearing on the matter. Section 56 (8) does not contain a provision requiring the issuance of a summons by a court or the receipt of a summons by a party. Consequently, a court order directing a law enforcement officer to seize a child in order to protect the child is valid provided the party from whose custody the child is taken receives sufficient notice of the impending hearing on the matter and the manner and nature of such notice complies with the requirements of procedural due process. See Thomas v.Culpepper, 356 So.2d 656 (Ala.Civ.App., 1978). Sufficient notice was obviously provided the Worleys in this instance since they appeared with their attorney at the preliminary hearing on September 1, and at that time they made no objection to the court's failure to issue a summons to them or to the order of August 11 under which DPS obtained temporary custody of Mendy Michelle. Moreover, at the preliminary hearing the court properly apprised all the parties concerned of the proceedings concerning the respective petitions of DPS and John Jinks. Accordingly, we do not believe the court erred in failing to direct the issuance of a summons to the Worleys.
Furthermore, even if we were to adopt the Worleys' view that the court acted under sections 56 (1) and 53 (a), the failure of the district court to direct the issuance of a summons to the Worleys did not constitute reversible error. The Worleys and their counsel appeared at the preliminary hearing which was held by the district *Page 1088 
court on September 1, 1977. And therefore the Worleys waived the service of summons by their voluntary appearance at that hearing in accordance with Title 12, chapter 15, section 53 (e), Code of Alabama 1975. Chisolm v. Crook, 272 Ala. 192,130 So.2d 191 (1961).
The third issue for our consideration involves the Worleys' assertion that the district court erred in awarding the custody of the child to her father. The Worleys argue that the father is incompetent to have custody of the child and that the best interests of the child would not be served by its being placed in his custody.
However, once again we note that where a court hears a matterore tenus, its judgment will be affirmed unless it be shown that the judgment is plainly and palpably in error. E.g.,Henderson v. Feary, Ala.Civ.App., 340 So.2d 808 (1976).
In the case at bar there is evidence that the father loves his child, that he has cared for it as a father should on the occasions when the baby girl has been in his custody and that he sought diligently to locate the child after its mother gave the child to a third party. In addition, he has a job and earns enough to support his new wife and young Mendy Michelle. Accordingly, we conclude that the evidence is sufficient to support the award of the child's custody to its father and that the district court's judgment is not plainly and palpably erroneous.
The Worleys' next contention concerns their objection to the introduction into evidence of a certified copy of a decree awarding John K. Jinks temporary custody of Mendy Michelle Jinks. This decree was rendered by the Eleventh District Court of Louisiana, Sabine Parish, during the time that the Louisiana court was considering Jinks' petition seeking a divorce from his wife, Quindal. The Worleys submit that the DeKalb County District Court erred in accepting the Louisiana decree into evidence. They contend that the decree arose out of a divorce action and that the parties to that action later reconciled their differences and resumed cohabitation, thereby nullifying the temporary custody order issued by the Louisiana court. Hence, the Worleys argue that the district court's August 11, 1977 order was based on the Louisiana decree and that in view of the fact that that decree was invalid, their efforts to adopt the child were prejudiced by the district court's consideration of the decree.
The district court in refusing to strike the exhibit demonstrating the Louisiana court's award of temporary custody to Jinks stated that it was not admitting the exhibit into evidence to prove that John Jinks had custody of the child by virtue of a court order from another state at the time of the district court's August 11 order placing the child in the temporary care of DPS. Indeed, the court stated that it was admitting the exhibit into evidence to show the attitude of the Louisiana court toward the father, a fact which the district court deemed relevant and material to the question of the father's fitness to have custody of his daughter.
The district court, when acting as a juvenile court to decide the proper custodian of a child, has wide latitude in the evidence it will consider, and evidence which is competent, relevant and material to the issue before it will be admitted. Title 12, chapter 15, section 65 (d) and (e), Code of Alabama 1975. See Caine v. Caine, 51 Ala. App. 607, 288 So.2d 147
(1973); Bowlen v. State Department of Pensions Security,51 Ala. App. 665, 288 So.2d 728 (1974). We consider the evidence admitted to be relevant and material to the issues before the court. Thus, the court was not in error for admitting the exhibit into evidence.
Finally, the Worleys urge that the district court erred in admitting into evidence a letter written to the DeKalb County DPS by the Sabine Parish office of the Family Services Division of the Louisiana Department of Health and Human Resources Administration. The letter written by the Family Services office contained references to John K. Jinks, his sister, Nola Ham, and Jinks' child, Mendy Michelle. The Worleys *Page 1089 
objected to its admission into evidence on the ground that it constituted hearsay.
In admitting the letter into evidence, the district court stated that it had requested that the DeKalb County DPS obtain all relevant information about John K. Jinks and Mendy Michelle Jinks. The court declared that such information would enable it to properly assess Jinks' claim that he was the father of Mendy Michelle and that she had been illegally taken from his custody.
Title 12, chapter 15, section 69 (a), Code of Alabama 1975 provides in applicable part:
 "(a) After a petition alleging . . . dependency has been filed, the court may direct that a predisposition study and report to the court be made . . . by the department of pensions and security when the petition alleges that the child is dependent concerning the child, his family, his environment and other matters relevant to the need for . . . disposition of the case."
The proferred report obviously complied with section 69 (a) since it was obtained in response to the request made to DPS by the district court. However, this report was offered into evidence at the hearing on the parties' petition in apparent contravention of Title 12, chapter 15, section 65 (e), Code of Alabama 1975, which provides in part:
 "(e) If the court finds from clear and convincing evidence, competent, material and relevant in nature, that the child is dependent and in need of care or supervision . . . the court may proceed immediately . . . to make proper disposition of the case."
While the report of the Louisiana authorities on the background of John Jinks would probably have been relevant and material with respect to the question of his fitness to have custody of Mendy Michelle, we nevertheless believe that the report contained hearsay and consequently was not competent evidence. Accordingly, the report should not have been admitted into evidence. Notwithstanding this conclusion as to the admissibility of the report, we are not persuaded that the court's action amounted to reversible error.
The contents of the letter received from the Louisiana authorities concerned interviews with John Jinks and Mr. and Mrs. Wayne Ham, Jinks' sister and brother-in-law. Jinks and his sister testified at the hearing on the custody petition and the information contained in the Louisiana report was substantially covered in their testimony.
We held in Bowlen v. State Department of Pensions Security,supra, that the admission of hearsay testimony into evidence is not prejudicial in instances where substantially the same evidence is provided by the in-court testimony of the persons who were the source of the hearsay evidence. Therefore, we conclude that the admission of the Louisiana report was not so prejudicial to the rights of the Worleys as to require reversal of the district court's judgment.
No reversible error having been argued, the judgment of the district court, juvenile division, is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.