This is an appeal from an order permanently depriving Rennotta Von Goyt of parental rights in her children, Maude Jones and Brian Von Goyt. We affirm.
On November 2, 1979 Miss Von Goyt, while a patient at Bryce Hospital in Tuscaloosa, gave birth to her daughter, Maude Jones. When Maude was six days old the Department of Pensions and Security obtained a voluntary boarding home agreement from Miss Von Goyt, permitting it to temporarily place Maude in a foster home. In January 1980 Maude was returned to Miss Von Goyt's custody. In March 1980 Miss Von Goyt was readmitted to Bryce Hospital, and she had been in and out of various mental institutions until July 1982 when she was released in order to give birth to her second child, Brian. Miss Von Goyt also moved several times from 1979 to 1983 because she was often asked to leave due to several complaints from neighbors about her unusual behavior.
Suzanne Pitts, a social worker at the Department of Pensions and Security, after becoming concerned about Maude's behavior and appearance around December 1983, took her to a pediatrician, who found traces of a major tranquilizer in Maude's urine sample. In January 1984 Miss Pitts and her supervisor filed a petition in the Tuscaloosa County Juvenile Court for termination of Miss Von Goyt's parental rights, alleging that her mental condition prevented her from properly caring for her children and that she was unable to provide them with a stable environment. The juvenile court terminated Miss Von Goyt's parental rights and awarded custody of the children to the department to be placed for adoption.
Miss Von Goyt appealed to the Tuscaloosa Circuit Court, which heard the case de novo, receiving into evidence Miss Von Goyt's medical records from Bryce Hospital and Indian Rivers Mental Health Center. The circuit court affirmed the juvenile court's order. After her motion for a new trial was denied, Miss Von Goyt appealed to this court. *Page 823 
Miss Von Goyt urges on appeal that the Bryce Hospital and Indian Rivers records containing information about her treatment are protected by the psychologist-client privilege pursuant to section 34-26-2, Code 1975, and should not have been admitted into evidence. The department contends that the privilege was waived because Miss Von Goyt signed several releases authorizing an exchange of her records between the department, Bryce Hospital, and Indian Rivers, and because she failed to object to Mr. Franklin's testimony in juvenile court about her mental condition. We disagree with the department's contentions.
There is testimony that Miss Von Goyt executed several releases; however, the record contains only one release, which release authorizes the Bryce Hospital records to be transferred to Indian Rivers. The release was provided for the stated purpose of "treatment planning" and was not a public disclosure. The privilege extends to this exchange of information between the mental health facilities, because the disclosure was necessary for Miss Von Goyt's treatment. See 97 C.J.S. Witnesses § 295 (1957). Moreover, the release stated that Miss Von Goyt could withdraw her consent at any time, and she did so at trial. We conclude, therefore, that the release signed by Miss Von Goyt did not constitute a voluntary waiver of her psychologist-patient privilege. Nor did her failure to object to Mr. Franklin's testimony constitute a voluntary waiver, because he is not a psychologist, and, thus, no privilege applies. Mr. Franklin also did not have Miss Von Goyt's privileged records before him in juvenile court, so that no objection was necessary. Accordingly, we reject the department's assertion that Miss Von Goyt waived her privilege.
However, the department contends that this privilege, if it exists, should not bar production of Miss Von Goyt's medical records, because the court needs these records in order to make the proper custody decision for the children.
The question whether the court may disregard the psychologist-patient privilege in a custody proceeding has not been addressed by our state courts. However, several other state courts have held that the right of a party to a custody proceeding to invoke the psychologist-patient privilege is outweighed by the right of a child to a proper determination of custody. See Critchlow v. Critchlow, 347 So.2d 453
(Fla.Dist.Ct.App. 1977); Matter of A.J.S., 630 P.2d 217 (Mont. 1981); In re Norwood, 194 Neb. 595, 234 N.W.2d 601 (1975); D.v. D., 108 N.J. Super. 149, 260 A.2d 255 (1969); People ex rel.Chitty v. Fitzgerald, 40 Misc.2d 966, 244 N.Y.S.2d 441 (Sup.Ct. 1963). See also Koump v. Smith, 25 N.Y. 287, 303 N.Y.S.2d 858,250 N.E.2d 857 (1969).
Our courts have consistently held that the paramount consideration in a custody matter is the child's best interests. Ezell v. Hammond, 447 So.2d 766 (Ala.Civ.App. 1984). A court cannot determine the best interests of the child without considering whether a party to a custody proceeding is physically, financially, or mentally able to care for the child. We find it significant that the legislature in section26-18-7, Code (Supp. 1984), indicates that a court may consider a parent's mental illness or deficiency in determining whether to terminate parental rights. Particularly, where the state has petitioned our court to terminate a mother's custody of her children because of her mental instability, the court should be permitted to investigate her mental health records in order to determine whether a termination is necessary.
We recognize that the psychologist-patient privilege is an important one, not to be easily disregarded. We do not seek to discourage troubled parents from obtaining professional help. However, we are convinced that where the issue of the mental state of a party to a custody suit is clearly in controversy, and a proper resolution of the custody issue requires disclosure of privileged medical records, the psychologist-patient privilege must yield. See Perry v.Fiumano, 61 A.D.2d 512, 403 N.Y.S.2d 382 (N.Y.App. Div. 1978). *Page 824 
Substantial doubt was cast on Miss Von Goyt's ability to care for her children. We find, therefore, that the trial court had sufficient evidence before it concerning Miss Von Goyt's instability to warrant an inspection of her medical records.
Miss Von Goyt asserts, however, that admission of her medical records was improper because these records were irrelevant. She urges that these records addressed merely her past ability to care for her children and not her present ability to do so. She cites Hamilton v. State, 410 So.2d 64 (Ala.Civ.App. 1982), as support for her contention. This case indicates that our courts must consider a mother's present ability to care for her children in determining whether to terminate her parental rights, and evidence of only her past life is insufficient to support a termination.
We find that the materiality of these records was clearly established by testimony from several witnesses concerning Miss Von Goyt's current mental instability and by the prognosis made by Mr. Franklin, indicating that her mental disorder was incurable. The department reports admitted into evidence were current and clearly reflected a relationship between her past and present mental condition, showing that her behavior was still unstable. Moreover, the trial court has wide latitude in the evidence that it may consider in deciding the proper custody of a child. Worley v. Jinks, 361 So.2d 1082
(Ala.Civ.App. 1978). We consider the admitted medical records to be relevant to the issues before the court. Thus, the court did not err in admitting Miss Von Goyt's medical records.
At trial David Franklin, a counselor at Indian Rivers Mental Health Center, testified that an Indian Rivers psychiatrist, whose report was contained in the admitted medical records, characterized Miss Von Goyt's mental disorder as "paranoid schizophrenia." He defined this term and stated that this diagnosis was consistent with his own, based on his personal observations of Miss Von Goyt. Miss Von Goyt contends that Mr. Franklin's testimony was inadmissible because he is not a qualified expert and was, therefore, unable to testify as to a diagnosis made by a psychiatrist, or to give his opinion about Miss Von Goyt's mental disorder.
The question whether a witness may be qualified as an expert is within the discretion of the trial court, and the court's decision will not be reversed unless it clearly appears that it was prejudicial error. Federal Mogul Corp. v. UniversalConstruction Co., 376 So.2d 716 (Ala.Civ.App. 1979). Generally, if it is shown that a witness has acquired knowledge in a particular field beyond that of an ordinary layman, through study, training, experience, or observation, that witness may be qualified as an expert. Aetna Life Insurance Co. v. Hare,47 Ala. App. 478, 256 So.2d 904 (Ala.Civ.App. 1972). Mr. Franklin has a master's degree in counseling and has worked twelve years as a counselor in the mental health field. He has served eight of those years as a counselor at Indian Rivers. Mr. Franklin was clearly shown to be competent to testify concerning certain psychological terms used in Miss Von Goyt's medical records and to give, based on personal observation, his opinion concerning her disorder. Thus, the court did not err in permitting Mr. Franklin to testify.
We conclude that substantial evidence was presented clearly showing that Miss Von Goyt is unable to properly care for her children. Accordingly, we affirm the order of the trial court terminating Miss Von Goyt's parental rights to her children.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur. *Page 825