INGRAM, Presiding Judge.
Following an ore tenus proceeding, the Juvenile Court of Jefferson County ordered the permanent termination of all parental rights of the mother and father in J.L., age ten. Permanent legal custody of the child was vested in the State Department of Human Resources (department). Only the mother appeals.
The dispositive issue on appeal is whether there exists clear and convincing evidence which supports the trial court’s decision to. terminate the mother’s parental rights. We note that the mother does not contest the finding of dependency.
It is well settled that a parent has a prima facie right to custody of a child. However, the overriding consideration is always the best interests of the child. McCullough v. State Department of Pensions & Security, 500 So.2d 1093 (Ala.Civ.App.1986). In determining the child’s best interest, the court must consider whether the parent is physically, financially, and mentally able to care for the child. Von Goyt v. State Department of Pensions & Security, 461 So.2d 821 (Ala.Civ.App.1984). The parental rights may be terminated if the court finds from clear and convincing evidence that the parent is unable or unwilling to discharge her responsibilities to and for the child. Ala.Code 1975, § 26-18-7(a).
Additionally, we note that the determination made by the trial court following an ore tenus proceeding is presumed correct and will not be disturbed on appeal unless it is unsupported by the evidence so as to be plainly and palpably wrong. Moore v. State Department of Pensions & Security, 470 So.2d 1269 (Ala.Civ.App.1985).
Here, the record reveals that the mother and father of the minor child are divorced. In 1987, J.L. began living with his father. However, in September of that year, custody was awarded to the department due to abuse by the father. At this time the mother was living with her mother, but went to jail in October for negotiating a worthless instrument and failure to appear for court. She remained in jail until March 1988.
After the mother was released from jail in March 1988, she went to the home of her former husband. Shortly thereafter, she moved to her grandmother’s home and remained there for three or four months. Next, she made several more moves and then left the state. Upon her return to Alabama, the mother was placed in jail. When released from jail, she lived with her great-grandmother until she was jailed again in March 1989. Subsequent to this release, the mother made numerous other moves, and by August 1989, she was back in jail for stealing and cashing a check.
The mother testified that she wrote bad cheeks to finance her drug addiction. She testified that her drug of choice was cocaine. She had also used marijuana and had tried a lot of other illegal drugs.
*1203 The record also reveals that the mother has a poor employment history. In 1982, the mother quit school after the tenth grade and worked for a year. She did not work again until 1988. She then worked for three months at a nursing home, two to three months at a McDonald’s restaurant, and approximately one month at an omelet shop.
During the time J.L. was in foster care, he received no financial support from his mother. Further, the mother’s visits with the child were infrequent. A social worker testified that when the mother did see the child, the visits were unusual or out of the ordinary in that they interacted as strangers. In fact, the social worker and the mother discussed on several occasions the mother’s desire to voluntarily terminate her parental rights.
We also note that the department made an effort to rehabilitate the mother. A service agreement was made between the department and the mother in April 1988. The agreement provided that the department would refer the mother to the Vocational Rehabilitation Service (VRS) and provide for J.L.’s needs. The mother was obligated to cooperate with VRS and the drug screening and counseling agency and to seek housing. The record reveals that the mother fulfilled none of her obligations. The mother was also offered parenting classes, but did not accept.
Under § 26-18-7(a), there are several factors which the court shall consider, but to which it is not limited, in determining whether a parent is unable or unwilling to discharge her responsibilities to and for the child. One of these is that reasonable efforts by the department leading toward the rehabilitation of the parent have failed. Here, the evidence is clear that the department worked with the mother in an effort for her to regain custody of her son. However, such attempts at rehabilitation have been unsuccessful. As noted above, the mother never fulfilled the provisions of the service agreement set up between her and the department. She has never established a permanent residence or obtained employment.
Another factor the trial court could have considered was the excessive use of a controlled substance, i.e., cocaine, which rendered the mother unable to care for the needs of the child. As noted above, the mother testified that she used many drugs, primarily cocaine, and that she wrote bad checks to finance her drug habit. She also testified that until her most recent arrest in August 1989, she did not believe that she needed rehabilitation from her drug usage.
Additionally, under § 26-18-7(b), where, as in this case, the child is not in the parent’s custody, the court shall consider the following: (1) the failure by the parent to maintain regular visits with the child, (2) the failure to maintain consistent contact or communication with the child, (3) the lack of efforts by the parent to adjust her circumstances to meet the needs of the child, and (4) failure by the parent to provide for the material needs of the child or to pay a reasonable portion of its support where the parent is able to do so. The record reveals that the mother has failed in each of the above considerations.
The record is also clear that in this instance there were no alternatives available less drastic than termination of parental rights to protect the best interests of the child. Ex Parte Beasley, 564 So.2d 950 (Ala.1990). As noted above, the evidence is clear and convincing that the mother was unable or unwilling to discharge her responsibilities to the child. During the two-year period in which the department worked with the mother, her situation never stabilized. Further, such conduct and conditions are unlikely to change in the foreseeable future. Since the child has been in foster care, the mother has continued using illegal drugs, has been in and out of jail, has not established a stable home, has made only infrequent visits to J.L., has contributed nothing to the support of J.L., and has not obtained permanent employment.
We do note that the mother is presently participating in a drug rehabilitation program. However, in view of her past history, we cannot say that the trial court erred in terminating her parental rights. There *1204 was testimony that the program could be quite lengthy, and a counselor testified that the relapse rate was quite high, especially with the mother’s history.
In view of the above, we find that the anticipated successful completion of the mother’s rehabilitation is too speculative and that the best interests of J.L. would be served by the termination of parental rights. The child has been in “out-of-home” care since September 1987, and during this time the mother made no effort to regain custody. Although we commend the mother for her present involvement with the drug treatment program, we find that the child needs a stable home environment at the present time. There was testimony that the child is presently adoptable and wants to settle down with a family.
After a careful review of the record and in view of the above, we find the trial court’s decision to terminate the mother’s parental rights in J.L. to be supported by the evidence.
This case is due to be affirmed.
AFFIRMED.
ROBERTSON and RUSSELL, JJ., concur.