This is a termination of parental rights case.
Following an ore tenus proceeding, the Juvenile Court of Jefferson County ordered the permanent termination of all parental rights of the mother in S.J., L.J., and T.J., ages nine, five and four respectively. The father's parental rights had previously been terminated. Permanent legal custody of the children was vested in the Alabama Department of Human Resources (department). The mother appeals.
The mother's only contention on appeal is that the trial court erred because, she says, there were less drastic alternatives available other than termination of her parental rights. She does not contest the finding of dependency.
It is well settled that a parent has a prima facie right to custody of a child. However, the overriding consideration is always the best interests of the child. McCullough v.Alabama Department of Pensions Security, 500 So.2d 1093
(Ala.Civ.App. 1986). In determining the child's best interests, the court must consider whether the parent is physically, financially, and mentally able to care for the child.Matter of Von Goyt, 461 So.2d 821 (Ala.Civ.App. 1984). The parental rights may be terminated if the court finds from clear and convincing evidence that the parent is unable *Page 1352 
or unwilling to discharge her responsibilities to and for the child. Ala. Code 1975, § 26-18-7(a).
Additionally, we note that the determination made by the trial court following an ore tenus proceeding is presumed correct and will not be disturbed on appeal unless it is so unsupported by the evidence as to be plainly and palpably wrong. In the Matter of Moore, 470 So.2d 1269
(Ala.Civ.App. 1985).
Here, the record reveals that the department has been involved with the mother, a single parent, since 1986. The department received reports that the mother had a drug problem and that her children were not receiving proper care, and in February 1987, it filed a petition for dependency. Several hearings were conducted and, by stipulation of the parties, the court found the children to be dependent and awarded custody to the department. The mother was ordered to attend a TASC program (Treatment Alternative to Street Crime), to attend a Women's Recovery Center program, and to have a psychological evaluation. Further, the department recommended that the mother attend parenting classes. After numerous hearings the mother's parental rights were terminated in September 1990.
The record indicates that while the mother lived in Alabama in 1987, rehabilitative services relating to her drug dependence were offered to her. She was referred to TASC and chose to submit to 90 days of random urinalysis surveillance. She declined counseling offered by TASC and failed to complete other programs offered. In fact, although she admitted that she had used cocaine in 1986 and 1987 (while pregnant with the youngest child), the record reveals that she has not completed any drug rehabilitation program.
We also note that the mother underwent a mental health evaluation. She was given the Minnesota Multiphasic Personality Inventory test. The results indicated a personality profile of someone who had chronic or stable adjustment problems, which were not usually helped to any great extent by therapy.
Six months after the children were removed from her custody, the mother moved to Ohio. She had no contact with the department until 1989. In May 1989, she contacted the department and gave her new address in Ohio. In June 1989, she again contacted the department after being notified that her oldest daughter (who was not involved in the present proceeding) had run away from shelter placement. The mother's next contact with the department was in October 1989, when she called to report that her oldest daughter was with her.
During the time the children were in the department's custody, they received no financial support from their mother. The mother did not see the children during this time. She never requested visitation, and her only contact with them has been by telephone.
The mother testified that she currently lives in Ohio and has been married for one year. She stated that she and her husband have a solid relationship and have room in their home for the three children. She further testified that she is now drug free.
Under § 26-18-7(a), there are several factors which the court shall consider, but to which it is not limited, in determining whether or not a parent is unable or unwilling to discharge her responsibilities to and for the child. One of these is that the parent has abandoned the child. Here, after the department was awarded custody of the children, the mother left the state for approximately three years.
Another factor that may be considered is that reasonable efforts by the department leading toward the rehabilitation of the parent had failed. Here, the evidence is clear that the department attempted to work with the mother. As noted above, the mother never attended any drug rehabilitation program and failed to complete any of the other programs recommended to her. To further complicate the department's efforts, the mother left the state for a period of three years.
Another factor the trial court could have considered was the excessive use of a controlled *Page 1353 
substance, i.e. cocaine, which rendered the mother unable to care for the needs of the children. As noted above, the mother testified that she used cocaine in 1986 and 1987, and, in fact, did so while she was pregnant with her youngest child. She also testified that she has not attended any drug rehabilitation program.
Additionally, under § 26-18-7(b), where, as in this case, the child is not in the parent's custody, the court shall consider the following: (1) the failure by the parent to maintain regular visits with the child, (2) the failure to maintain consistent contact or communication with the child, (3) the lack of efforts by the parent to adjust her circumstances to meet the needs of the child, and (4) failure by the parent to provide for the material needs of the child or to pay a reasonable portion of its support where the parent is able to do so. The record reveals that the mother has failed in each of the above considerations.
The record is also clear that, in this instance, there were no alternatives less drastic than termination of parental rights available to protect the best interests of the children.Ex parte Beasley, 564 So.2d 950 (Ala. 1990).
The children have been in the department's care since 1987, and during this time the mother made no effort to regain custody. At the time the mother lost custody of the children, the children were five years old, eighteen months old, and three months old. While in foster care, the oldest child, now eight years old, had talked to the mother on the phone. The record reveals, however, that the child did not put much faith in what the mother had promised or said as she has continuously let the child down. The younger two children saw the foster parents as their parents.
Furthermore, during the time the children were in foster care, there is no indication of record that any of the mother's family, i.e., the children's grandmother, aunt or uncle, ever visited the children or petitioned the court for their custody. In fact, the grandmother and aunt, although subpoenaed, were not even present at the termination hearing.
Although we commend the mother for presently attempting to straighten out her life, we find that in this instance, the best interests of the children have been served by termination of parental rights. There is evidence that the children are presently adoptable.
After a careful review of the record and in view of the above, we find the trial court's decision to terminate the mother's parental rights to be supported by the evidence.
This case is due to be affirmed.
AFFIRMED.
THIGPEN and RUSSELL, JJ., concur.