ROBERTSON, Presiding Judge.
This is a termination of parental rights case.
Following an ore tenus proceeding, the Circuit Court of Walker County ordered the permanent termination of all parental rights of the mother and the father in C.S., C.S., A.S., and K.S., approximately ages nine, eight, six, and five respectfully.
Permanent legal custody of the children was vested in the Alabama Department of Human Resources (department). The mother appeals. We note that the father also filed a notice of appeal. However, his appeal was subsequently dismissed.
The mother contends on appeal that the trial court erred in concluding that she has never demonstrated the capability of properly caring for her children and that it would not be in the children’s best interests to be returned to her.
We note that the mother raises two other issues in her brief. However, she has failed to cite any authority in support of her arguments on those issues. Therefore, in view of A.R.App.P., Rule 28, we decline to address her contentions.
It is well settled that a parent has a prima facie right to custody of a child. However, the overriding consideration is always the best interests of the child. McCullough v. Alabama Department of Pensions & Security, 500 So.2d 1093 (Ala.Civ.App.1986). In determining the child’s best interests, the court must consider whether the parent is physically, financially, and mentally able to care for the child. Matter of Von Goyt, 461 So.2d 821 (Ala.Civ.App.1984). The parental rights may be terminated if the court finds, from clear and convincing evidence, that the parent is unable or unwilling to discharge her responsibilities to and for the child. Ala. Code 1975, § 26-18-7(a).
Additionally, we note that the determination made by the trial court following an ore tenus proceeding is presumed correct and will not be disturbed on appeal unless it is so unsupported by the evidence as to be plainly and palpably wrong. In the Matter of Moore, 470 So.2d 1269 (Ala.Civ.App.1985).
Here, the department has been involved with this family since 1982. Custody of three of the children was placed with the department in 1984. The fourth child was born in December 1985, and was placed in the department’s custody within three months of his birth. All of the children have remained in the department’s custody since that time.
A social worker testified that when she visited the family at the children’s paternal grandmother’s house, the home had no indoor plumbing and was in very poor condition. There were two children in the home *1131 at that time, and the mother was pregnant. There were soiled baby diapers stacked in the fireplace and in the yard. The social worker stated that the paternal grandmother did not like for the social worker to visit the family home and was very hostile on occasions. When the social worker did not notice any improvement in the home environment, homemaker services were begun. On one visit to the home, the social worker noted that there were roaches all over the baby. She also observed that there was dog feces everywhere, as well as dogs and cats in and out of the home. The social worker continued to work with the family for almost three years.
In 1984 a third child was born. The child was born on the way to the hospital and suffered a cranial hemorrhage. The baby remained in the hospital for several days and was then released to the mother. The child was referred to a doctor for its condition; however, the mother failed to keep the appointment. When the mother did take the child to the doctor, the child had a yeast infection and thrush of the mouth.
Another child has been diagnosed as having eosinophilia (heart worms), which is a condition caused from a history of eating dirt that contained dog feces. The record reveals that this is a serious life threatening situation. The child has severe pulmonary involvement and relatively severe liver and spleen involvement. The treating physician found the child to be psychologically delayed. At age twenty months, the child could not walk, and his teeth were basically rotted out as a result of having only been fed from a bottle. Further, the child had only progressed to the stage of a nine-month-old child. The physician also stated that when the child was approximately three years old he had only minimal verbal skills, did not know how to use a spoon or a fork, and had no toilet training.
As concerns the improvements requested by the department, the social worker testified that the family painted their kitchen and installed a bath tub. However, homemaker services were later terminated by Children’s Aid Society because of problems in the home.
Another social worker was assigned to the case in August 1985. During her first visit, she discussed what the mother would need to do in order to regain custody of the children. A schedule was set up for homemaker services to begin again. Also, weekend visitation was set up. The mother was again pregnant and due to deliver another child in December 1985.
The social worker stated that after weekend visits the children were returned to foster care dirty. Although the social worker would discuss this with the mother, the social worker stated that the mother was not very receptive to any suggestions and was very defensive. The social worker continued to try to visit with the family. However, there was evidence that on one occasion, the mother threatened to shoot the social worker if she returned to the home. As concerns the homemaker services, the social worker performing these services requested that they be terminated, because the father attempted to run over her with his car while she was standing in his yard.
A social worker, from the Jefferson County Department of Human Resources, testified that in 1989 she received a request to conduct home studies. Supposedly, the mother was living with the children’s maternal grandmother in Jefferson County. However, the social worker was not able to contact the mother due to the fact that she had apparently moved back to Walker County. Another request was made in September 1989. At this time, the mother was living with the children’s maternal grandmother in Jefferson County; however, the mother informed the social worker that she was in the process of moving out and would be living with a friend. The mother was to notify the social worker of her whereabouts as soon as she was settled. However, the mother never contacted the social worker. The third request was made before the July 1990 court hearing. The social worker was again unable to complete an evaluation due to the fact that the mother was no longer in Jefferson County. In November 1990, the social worker was able to contact the mother at the maternal *1132 grandmother’s home, and an evaluation was finally completed.
A review of the record reveals that the mother’s whereabouts were confusing at best. It is evident that she moved frequently and was dependent upon others for a place to live. Due to her failure to keep in touch with the department, it was difficult to evaluate her progress toward rehabilitation or to determine if her current situation was in fact stable. Further, the mother testified that she could not provide for her children alone, but that her parents and brothers would help her provide for them. Yet, as noted above, the mother moved in and out of the maternal grandmother’s home over the past two years. Clearly, her housing situation was unstable, and she continued to remain dependent upon others for housing.
Under § 26-18-7(a), there are several factors which the court shall consider, but to which it is not limited, in determining whether or not a parent is unable or unwilling to discharge her responsibilities to and for the child. One of these is that reasonable efforts by the department leading toward the rehabilitation of the parent has failed.
Additionally, under § 26-18-7(b), where, as in this case, the child is not in the parent’s custody, the court shall consider the following: (1) the failure by the parent to maintain regular visits with the child, (2) the failure to maintain consistent contact or communication with the child, (3) the lack of efforts by the parent to adjust her circumstances to meet the needs of the child, and (4) failure by the parent to provide for the material needs of the child or to pay a reasonable portion of its support where the parent is able to do so. The record reveals that the mother has failed in each of the above considerations.
The record is also clear that, in this instance, there were no alternatives less drastic than termination of parental rights available to protect the best interests of the children. Ex parte Beasley, 564 So.2d 950 (Ala.Civ.App.1990).
After a careful review of the record, and in view of the above, we find the trial court’s decision to terminate the mother's parental rights to be supported by the evidence. The condition of the children while living with their mother, as well as the condition of the home, established neglect which was so gross and damaging to the children that it was to the point of abuse. There was an obvious lack of concern for the children’s best interests. The department worked with the mother; however, the situation has not improved. The children have been in foster care.for approximately six years, and the mother has not attempted to rehabilitate herself or demonstrate an ability to provide appropriate care for her children.
This case is due to be affirmed.
AFFIRMED.
THIGPEN and RUSSELL, JJ., concur.