PER CURIAM.
C.S. (“the mother”) appeals from a judgment of the Mobile Juvenile Court terminating her parental rights as to a 12-year-old minor child, A.L.C. (“the child”), in response to a petition filed by the Mobile County Department of Human Resources (“DHR”) and after holding an ore tenus proceeding at which a DHR caseworker and her supervisor, a psychologist who had evaluated the mother, a mental-health therapist who has counseled the child, a family counselor, the child’s foster father, and the child’s maternal grandmother testified. In pertinent part, the judgment under review provides as follows:
“[The child] is a dependent child as that term is defined in the Code of Alabama having been adjudicated to be a dependent child by order of this Court lastly in 2004. The child has remained in the custody of [DHR] since [that] time.
“... This Court previously issued an order terminating the rights of the mother and the father, [R.C.,] but the mother appealed said judgment and the same was reversed [see C.S.B. v. State Dep’t of Human Res., 26 So.3d 426 (Ala.Civ.App.2009) (‘C.S. I’)]. The father did not appeal and this Court determines that the father’s rights have been terminated.
“... Subsequent to remand to this Court, the Court dismissed the termination of parental rights petition and [adjudicated in the mother’s favor] a subsequent termination of parental rights petition [via a] summary judgment [see Mobile Cnty. Dep’t of Human Res. v. C.S., 89 So.3d 780 (Ala.Civ.App.2012) (‘C.S. II’)]. The Court thereafter directed [DHR] to resume efforts at reunification.
“... From the evidence presented this date, the Court finds [DHR] exercised all reasonable efforts to promote a reunification plan but that said plan failed because the mother is incapable of taking care of the child and providing for the child’s needs.
“... The Court finds that although [DHR] has made little if any efforts to find relative placement ... the evidence shows that only the maternal grandmother is a relative who has had any involvement with the child[] and the mother, and that the maternal grandmother has never sought custody of the child. The Court further finds that the maternal grandmother is well aware of the circumstances surrounding the child and the mother, and that her failure to seek to intervene in this matter establishes, in the Court’s opinion, that she is not a viable placement resource. The Court therefore concludes that there are no relatives who are able or willing to take the care, custody, and control of [the] child.
“... The Court further finds that the child has been in the care of the current foster parents for most of the child’s life, has formed a significant bond with said foster parents, and that said foster parents are desirous of adopting this child. The Court finds that it is in the best interest of the child that she be allowed to be adopted by said foster parents.
“... The Court concludes from all of the evidence that although the mother and child have a relationship, the child has a more significant relationship with the current foster parents and that said relationship should be made permanent by adoption and that therefore it is necessary to terminate the parental rights of the mother.
“... Given the age of the child, and the relationship between the child and the mother and the relationship between the mother and the foster parents, this Court is convinced that the foster parents, (and later the adoptive parents), *683 will allow the child to maintain a significant relationship with the mother and that the same would be in the best interest of the child.
“... Wherefore the Court finds that termination of parental rights is in the best interest of the child.”
As a prefatory matter, we note that, in C.S. I, although a majority of this court opined that while the juvenile court could properly have determined the mother to have a mental defect and that “expert testimony should not be required to prove an obvious mental deficit,” 26 So.Sd at 433 (Moore, J., concurring specially but agreeing to proposition asserted in dissent authored by Thomas, J., and joined by Bryan, J.), a different majority of this court simultaneously concluded that DHR had failed to secure the admission of “evidence as to the extent of the mother’s limited mental capacity, whether the mother’s mental limitations prevent her from being able to fulfill her parental responsibilities to the child, and whether the mother’s condition is likely to change” and noted that DHR had not appealed from the judgment to the extent that the juvenile court had excluded testimonial and documentary evidence of the mother’s mental evaluations that might have supported the initial termination judgment. 26 So.3d at 432 (per Thompson, P.J., with Pittman, J., concurring and Moore, J., concurring specially). Similarly, in C.S. II, we held that DHR’s second action seeking the termination of the mother’s parental rights had been foiled by DHR’s own admission that nothing had changed since the filing of its initial termination petition and by DHR’s failure to timely submit evidence rebutting that admission. 89 So.3d at 783-84. Thus, neither of our previous decisions foreclosed DHR from seeking to demonstrate that the mother’s mental condition was sufficiently severe to prevent her from fulfilling her parental responsibilities and, therefore, to warrant termination of her parental rights.
One of the means by which DHR sought to fulfill that burden in this third termination proceeding was by soliciting the expert testimony of the psychologist who had evaluated the mother in 2012. Trial counsel for the mother objected to that evidence on two grounds: (a) the purported applicability of the psychotherapist-patient evidentiary privilege and the absence of a valid release waiving the privilege and (b) contravention of federal medical-nondisclosure laws. After trial counsel for DHR argued that the psychotherapist-patient privilege did not apply in cases involving the custody of children, citing Rule 503(d)(5), Ala. R. Evid., the juvenile court overruled the mother’s objection; that court later denied a motion to strike asserted after the psychologist had given testimony in the case. The mother’s appellate brief, filed by newly appointed counsel, raises as its first issue the propriety, in light of the psychotherapist-patient privilege, of the juvenile court’s ruling allowing the admission of the psychologist’s testimony.
We conclude that DHR’s position, that the psychologist’s testimony was admissible, is the correct one. Rule 503(d)(5), Ala. R. Evid., provides that “[t]here is no privilege ... for relevant communications offered in a child custody case in which the mental state of a party is clearly an issue and a proper resolution of the custody question requires disclosure.” Although the mother’s point that a termination action does not easily fit within the boundaries of a “child custody case” is facially sound, the mother overlooks the fact that Rule 503(d)(5) “continues Alabama’s preexisting, judicially created, exception to the psychotherapist-patient privilege.” Rule 503, Ala. R. Evid., Advisory Committee’s Notes.
*684 Among the cases cited by the Advisory Committee as recognizing the exception is a termination-of-parental-rights case, In re Von Goyt, 461 So.2d 821 (Ala.Civ.App.1984), in which this court rejected a privilege claim under Ala.Code 1975, § 34-26-2, asserted by a respondent parent as to records of her psychiatric treatment that was substantially similar to the claim raised by the mother in this ease regarding testimony as to her psychological condition:
“Our courts have consistently held that the paramount consideration in a custody matter is the child’s best interests. A court cannot determine the best interests of the child without considering whether a party to a custody proceeding is physically, financially, or mentally able to care for the child. We find it significant that the legislature in [Ala. Code 1975, § 26-18-7, the statutory predecessor to current Ala.Code 1975, § 12-15-319,] indicates that a court may consider a parent’s mental illness or deficiency in determining whether to terminate parental rights. Particularly, where the state has petitioned our court to terminate a mother’s custody of her children because of her mental instability, the court should be permitted to investigate her mental health records in order to determine whether a termination is necessary.
“We recognize that the psychologist-patient privilege is an important one, not to be easily disregarded. We do not seek to discourage troubled parents from obtaining professional help. However, we are convinced that where the issue of the mental state of a party to a custody suit is clearly in controversy, and a proper resolution of the custody issue requires disclosure of privileged medical records, the psychologist-patient privilege must yield.
“Substantial doubt was cast on [the respondent’s] ability to care for her children. We find, therefore, that the trial court had sufficient evidence before it concerning [her] instability to warrant an inspection of her medical records.”
461 So.2d at 823-24 (citations omitted). Thus, because Rule 503(d)(5) carries forward preexisting Alabama judicial interpretations of the extent of the psychotherapist-patient privilege, and specifically the interpretation espoused in In re Von Goyt, we conclude that the juvenile court properly permitted the psychologist to testify regarding his evaluation of the mother in light of the crucial importance of the mother’s mental condition concerning her possible ability to ever regain custody of the child.
The mother’s remaining arguments concern whether the juvenile court correctly determined that DHR had made reasonable efforts to effect reunification, that no viable alternative to termination existed (such as, the mother suggests, continued visitation without custody or relative placement with the maternal grandmother), and that termination of parental rights is in the best interest of the child. Those arguments, in effect, largely challenge the sufficiency of the evidence to support the judgment of termination as provided for in § 12-15-319(a), Ala.Code 1975, which authorizes termination of parental rights upon a judicial determination, based upon clear and convincing evidence, that a child’s parents “are unable or unwilling to discharge their responsibilities to and for the child” or that “the conduct or condition of the parents renders them unable to properly care for the child and that the conduct or condition is unlikely to change in the foreseeable future,” and caselaw interpreting that statute and its predecessors. In making that determination, the pertinent court is directed to consider certain factors, including whether a parent suffers from “[e]motional illness, *685 mental illness or mental deficiency ... of a duration or nature as to render the parent unable to care for needs of the child.” Id. at subsection (a)(2). Because the juvenile court’s judgment was entered after an ore tenus proceeding, the applicable standard of review is that espoused in Ex parte State Department of Human Resources, 834 So.2d 117, 120-21 (Ala.2002), namely that appellate courts are to presume that trial courts’ findings in cases involving child custody are correct and that reversal will not obtain absent a clear abuse of discretion or plain error. See also Ex parte State Dep’t of Human Res., 682 So.2d 459, 460 (Ala.1996).
Apart from asserting that the juvenile court should have excluded certain evidence regarding the extent and severity of the mother’s mental conditions (ie., mental retardation and schizophrenia of the paranoid type), the mother does not assert on appeal the insufficiency of the evidence adduced at trial to support the juvenile court’s conclusion that she “is incapable of taking care of the child and providing for the child’s needs” — that is, that the mother is unable to discharge her parental responsibilities. In that respect, the procedural posture of this appeal is markedly different from C.S. I, in which the sufficiency of the evidence to support the mother’s incapacity was squarely at issue, and C.S. II, in which evidence that might have supported a different outcome was not timely tendered by DHR.
As to the remaining specific issues raised by the mother in this appeal, we cannot conclude that the juvenile court erred. The mother first asserts that DHR was required to exert reasonable efforts toward reunification and generally posits that DHR failed to undertake such efforts in this case. Notably, the mother’s two-page argument contains no citations of legal authority supporting her position to the effect that DHR failed to discharge any legal duty it might have had with respect to effecting possible reunification between the mother and the child, and that omission arguably warrants affirmance on that ground. See Rule 28(a)(10), Ala. R.App. P.; L.T. v. W.L., 47 So.3d 1241, 1247 (Ala.Civ.App.2009). Even our addressing the merits, however, would not mandate reversal. As DHR’s brief correctly notes, neither the Alabama Juvenile Justice Act nor pertinent caselaw requires DHR to effect rehabilitation of a parent having a mental condition that renders the parent unable to care for the child and that is unlikely to change in the foreseeable future. See D.W. v. State Dep’t of Human Res., 595 So.2d 502, 504 (Aa.Civ.App.1992); accord Aa.Code 1975, § 12-15-312(c)(l)e. Under the circumstances of this case, in which the psychologist who had evaluated the mother testified that no mental-health services could assist the mother so as to offer hope for improvement, the juvenile court could properly have deemed DHR’s efforts to help the mother, which had included offers of a physical examination, a psychological examination, and transportation assistance to visitation in addition to counseling, to have been reasonable.[1]
Moreover, we disagree with the mother that the juvenile court erred in declining to implement the two less drastic alternatives to termination she has advanced. With respect to maintaining the *686 status quo, under which the mother would remain able to exercise regular supervised visitation with the child, this court has, on occasion, observed that to allow a parent restricted visitation rights may indeed amount to “a viable alternative to termination of parental rights when it appears that a wayward parent cannot be rehabilitated but still shares a deep and beneficial emotional relationship with his or her children.” T.D.K. v. L.A.W., 78 So.3d 1006, 1011 (Ala.Civ.App.2011). In this case, however, DHR adduced evidence that tended to show that no such significant, meaningful relationship exists between the mother and the child, who have been separated since April 2004 (when the now-12year-old child was 2 years old); the record reflects that the child, during scheduled hour-long visitations, principally talks to DHR representatives about her daily routine and that the mother “shuts down” emotionally during the visits and/or makes complaints about the behavior of the mother’s current and former husbands and the child’s foster father. Further, the juvenile court heard testimony that the mother regularly makes spurious abuse allegations to DHR regarding the child’s foster parents, tending to indicate that she would not be content to exercise only residual visitation rights as to the child.[2]
As to placement of the child with the maternal grandmother, the sole relative resource the mother identified, the record reflects that the maternal grandmother declined to respond to a DHR inquiry concerning her willingness to assist the mother in caring for the child, that the maternal grandmother admitted at trial to having no interest in visiting with the child, and that the maternal grandmother had not previously presented herself as a potential custodian during the nine-year history of the case. As we noted in M.J.C. v. G.R.W., 69 So.3d 197, 209 (Ala.Civ.App.2011), “the last-minute proffer of a potential resource for a child’s placement will not suffice to delay the termination of parental rights.”
Based upon the foregoing facts and authorities, the juvenile court could properly have determined, as it did, that the mother’s parental rights as- to the child were subject to termination under Ala. Code 1975, § 12-15-319(a)(2). Further, that court, in light of the evidence that the child and the mother had no significant relationship whose severance would have harmed the child, could properly have determined that the termination of the mother’s parental rights in order to facilitate the child’s adoption by her long-term foster parents would be in her best interests. We therefore affirm the judgment of the juvenile court.
AFFIRMED.
*687 THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.
MOORE, J., concurs in the result in part and dissents in part, with writing.

. Our conclusion as to that issue obviates any need to consider DHR’s obligation to make reasonable efforts in light of DHR's having adduced evidence demonstrating that the mother’s parental rights to a sibling of the child had been terminated in 2001. Cf. Ala. Code 1975, § 12-15-312(c) (indicating that reasonable efforts to preserve and reunify families are not required if a juvenile court determines that parental rights to a sibling have been involuntarily terminated).

. In his special writing, Judge Moore takes issue with our reliance upon the foregoing evidence in reaching the conclusion that the juvenile court’s judgment was correct, opining that "the juvenile court obviously rejected that evidence when it found, based on the evidence favorable to the mother, that the mother and the child share a 'significant relationship’ and that it would serve the best interests of the child to maintain that relationship.” 166 So.3d at 688 (Moore, J., concurring in the result in part and dissenting in part). The juvenile court’s judgment actually provides that "the mother and child have a relationship ” but that "the child has a more significant relationship with the current foster parents and that said relationship should be made permanent by adoption” (emphases added). The juvenile court’s aspirational expectation that the child's long-term foster parents would permit some continued post-judgment contact between the child and the mother in no way undercuts the force of that court's determination to the effect that the child in this case, after almost 10 full years in foster care, deserves the stability and permanency of adoption by her long-term foster caregivers.