THOMPSON, Presiding Judge,
dissenting.
In our February 26, 2016, decision,' this court'reversed that part of the judgment of the Marshall Juvenile Court (“the juvenile court”) transferring immediate custody of J.J.V. (“the child”) to J.V. (“the father”) because of our concern for the welfare’and safety of the child and to allow a more appropriate relationship between the father and the child to develop. Marshall Cty. Dep’t of Human Res. v. J.V., 203 So.3d 1243 (Ala.Civ.App.2016), This court held that the father and the child did not “.have a relationship strong enough to accomplish the transition of custody” and that “[b]oth the child and the father would be ill-served by a transition of custody at this time and under these circumstances.” Marshall Cty. Dep’t of Human Res. v. J.V., 203 So.3d at 1245.
Following this court’s decision in Marshall County Department of Human Resources v. J.V., supra, the parties arrived at' and the juvenjle court sanctioned a “visitation plan to transition to legal and physical custody” of. the child to the father* *522 which began with supervised visitation-and gradually increased to unsupervised, overnight visitation. The ultimate goal of the transition was to have the father assume legal and physical custody of the child on July 1, 2016. The transition plan also provided that “[t]he child and [the] father shall continue to participate and cooperate with counseling with Dr. [Elaine] Eassa, a licensed psychologist.’’
In its petition for a writ of mandamus filed in this court, the Marshall County Department of Human Resources (“DHR”) alleges that certain events have occurred during the transition period, and it requests that this court order the juvenile court to “cease visitation in order to preserve the health and safety of the child.” In support of its petition, DHR presented evidence indicating that Dr, Lois W. Pe-trella, a licensed psychologist, evaluated the nine-year-old child in mid-May 2016. Dr. Petrella diagnosed the child as having post-traumatic stress disorder, among other things. The child cut herself with a can while visiting her father and attempted to shock or electrocute herself in order to avoid being forced to visit the father. This child has also stated that — at nine years of age — she has had thoughts of suicide when faced with having to visit the father. The evidence presented in Ex parte Marshall County DHR, supra, indicated that, because the Georgia home study'regarding the father’s home had not been approved, the Georgia child-protection agency would not monitor the family in connection with this case when the child visits the father or after the child is placed in the father’s custody in Georgia.
I do not agree with the main opinion when it states that “DHR’s request that we' order the juvenile court to ‘terminate’ the father’s visitation is in essence a request that we order the juvenile court to modify the award of custody to the father.” 234 So.3d at 521. I view DHR’s petition as requesting that this court order the juvenile court to exercise its power to protect the health and safety of the child. See § 12-15-138, Ala.Code 1975 (“The'juvenile court, at any time after a dependency petition has been filed, or on an emergency basis, may énter an order of protection or restraint to protect the health or safety of a child subject to the proceeding.”)..
Regardless of whether this court affirmed the initial award of custody to the father, the juvenile court possesses the power to halt visitation based upon the best interests ánd welfare of the child and to consider any properly filed modification action. Although I understand that the juvenile court is attempting tó meet one of the goals of the Alabama Juvenile Justice Act (“the AJJA”), § 12-15-101 et seq., Ala. Code 1975, by seeking to reunite the father and the child, I note that the AJJA requires that reunification be achieved in a manner that ensures the child’s safety. See § 12-15-101(b)(3), Ala.Code 1975 (A goal of the AJJA is “[t]o reunite a child with his or her parent or parents as quickly and as safely as possible when the child has been removed from the cústody of his or her parent or parents unless reunification is judicially determined not to be in the best interests of the child.”).
The evidence from the most recent psychological evaluation of the child is consistent with previous evidence indicating that the child has engaged in self-destructive behavior, and it appears to me that the situation has deteriorated rather than improved since the issuance of our last opinion. I can see no reason to alter my position that an immediate transfer of custody to the father is not presently in the best interests of the child. It is the function of the courts of this state to protect the children before them. J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1211 *523 (Ala.Civ.App.2007); C.S. v. Mobile Cty. Dep’t of Human Res., 166 So.3d 680, 684 (Ala.Civ.App.2014). The juvenile court appears to have rejected the allegations that the father sexually abused the child. In any regard, whether the child needs protection from the father or not, it is clear that the child needs protection from her own potential conduct if she is forced to visit the father or transition to his home. Accordingly, I would grant DHR’s petition for a writ of mandamus and direct the juvenile court to end the visitation or at least temporarily suspend the transition until a more acceptable solution can be reached.