CRAWLEY, Judge.
Jessie Kelly (“the wife”) appeals from a judgment divorcing her from Sammy Kelly (“the husband”). She contends that the trial court abused its discretion by awarding her what she says is an inequitable portion of the marital property and an insufficient amount of periodic alimony.
The parties were ceremonially married in June 1992.[1] The wife left the marital *428 home in April 2002, and she filed for a divorce in July 2002, alleging that the parties were incompatible and that the marriage had irretrievably broken down because of what, she says, is the husband’s alcoholism. The trial court entered a pen-dente lite order requiring the husband to pay the wife $750 per month in spousal support, giving the wife possession of a vehicle, and ordering the wife to make the monthly payments on the vehicle.
Following an ore tenus proceeding, the trial court divorced the parties, divided the marital assets and debts, and awarded the wife $100 per month in periodic alimony. The court awarded each party the furniture, furnishings, household goods, and other personal property (including the vehicles) in his or her possession, and it ordered that each party be responsible for any indebtedness on the personal property awarded to them. The court awarded the husband the marital home, consisting of a mobile home and 7.4 acres of land, which had been appraised in October 1997 at $48,750 and was subject to a mortgage indebtedness of approximately $25,000. The court also awarded the husband his entire employer-funded, profit-sharing and 401(k) plan, valued at $28,454 — $18,000 of which was accumulated during the marriage. The husband was awarded the “old truck” in his possession; the make, model, and value of this vehicle are not included in the record. The court ordered the husband to pay the wife’s dental bill of $799 and $1,250 of the wife’s $6,500 attorney fee.
At the time of trial in June 2003, the wife was 57 years old. She testified that during the marriage she had worked as a cashier. She stated that she had quit work in 1996, had gone back to work in 1998, and had quit again in 1999. Since 1999, she said, she had been doing housecleaning and babysitting work. The wife testified that this marriage was her fifth, although she explained that she had been married twice to one of her previous husbands.
The wife testified that the husband drank one or two six-packs of beer every day; she said that most evenings he was drunk and that often he was verbally abusive. She acknowledged that she had left the marital home on four or five prior occasions, going to stay for short periods with her daughter. The wife testified that the husband had asked her not to make him choose between her and the alcohol because she “would lose.” In April 2002, when the wife left the marital home for good, she went to live with her adult daughter. The daughter testified at trial that she had paid the wife’s bills from April 2002 until January 2003, when the court issued a pendente lite order requiring the husband to pay spousal support. The daughter testified that she had paid the following monthly expenses for the wife: a $479 car note; $250 in prescription and medical co-pay charges; and $58 for automobile insurance.
The wife stated that although the marital home and adjoining acreage had been appraised in 1997 at $48,750, she thought the property was worth $55,000 at the time of trial. She said that the vehicle in her possession, a 2001 Ford Escape, was worth *429 $25,000 and that she had 24 more monthly payments of $479 to make on it.
Dr. Michael Faircloth, the wife’s family-practice physician since 1993, testified by deposition that the wife has coronary-artery disease; in 2002, the wife had two stents surgically inserted to open a blocked artery. Dr. Faircloth said that the wife had been diagnosed by Dr. Cornelius Thomas, a rheumatologist, with fibromyalgia, a condition Dr. Faircloth described as “a somewhat ill-defined musculoskeletal disorder [accompanied by] specific muscle pain that recurs as chronic, often associated with fatigue, often associated with depression.” Dr. Faircloth stated that his medical records indicated that the wife also suffered from panic attacks and irritable bowel syndrome, a disorder characterized by cramps, bloating, and diarrhea. According to Dr. Faircloth, the wife sought his opinion about whether or not she should be working. Dr. Faircloth made no recommendation but suggested that the wife apply for disability benefits. Dr. Faircloth listed nine different prescription medications that the wife was currently taking: Plavix (a blood thinner); Folate (a medication for coronary-artery disease); Prozac (an antidepressant); Nexium (for acid reflux); Klono-pin (a sleep aid); Lipitor (a .cholesterol medication); ACTZ (a blood, pressure medication); Ultram (a pain reliever); and Carafate (a ■ medication for ulcers and gastric conditions). A document introduced by the wife listed 10 additional prescription medications not mentioned by Dr. Faircloth, including Hydrochlorot, Celebrex, FOLTX, Baclofen, Fluoxetine, Colonazepan, Metoclopram, AvaPro, Allegra, and Miralax powder.
On cross-examination, Dr. Faircloth acknowledged that many of the symptoms of fibromyalgia are subjective and that there are physicians who “do not believe it exists.” He gave his opinion, however, that it would be “hard to fool” the rheumatologist who diagnosed the wife as suffering from the condition. Dr. Faircloth stated that, although it was possible that some of the wife’s ailments were psychosomatic, he did not believe that the wife was a hypochondriac. He testified that the wife was unable to work at a job that required “a lot of exertion or heavy lifting” or one that required prolonged standing, sitting, or walking; however, he said, the wife could probably babysit or do other jobs that required intermittent walking and sitting.
At the time of trial, the husband was 47 years old. He testified that he had been married' once before and has a daughter for whom he was paying $306 per month in child support. The husband works in maintenance for Steward Machine Company. His gross income in 2002 was $55,904. He stated that his income had recently decreased because his employer had reduced his work week to 30 hours. He explained that, before the reduction, his net monthly pay was $2,900 but now it is $1,784. The husband offered and the trial court admitted into evidence a document indicating that the husband’s monthly living expenses were $2,628.80.
The husband testified that he bought the mobile home that was the parties’ marital residence in 1991, during the time the wife says the parties were living together in a common-law marriage. The husband testified that he and the wife did not move in together until 1992. Both parties agree that in 1994 the husband received 7.4 acres of real property as an inheritance from his father and the parties subsequently moved the mobile home to the site. The wife’s name was not put on the deed to the real estate. In 1997, the parties borrowed $36,000, secured by a mortgage on the real *430 property, and used it to pay marital debts. The monthly mortgage payment is $436.20.
The husband stated that the wife had left him at least 10 times during the marriage, for periods lasting anywhere from a weekend to 2 months. He said that, after the first six months of the marriage, the parties’ sexual relationship deteriorated and that they had not had marital relations at all for three years. He testified that he had done most of the cooking and cleaning during the marriage. He denied that he was drunk every night and stated that he drinks only on the weekends.
Matters of alimony and property division are interrelated, and a reviewing court must consider the entire judgment in determining whether the trial court abused its discretion on either issue. Willing v. Willing, 655 So.2d 1064 (Ala.Civ.App.1995). A trial court is free to consider the facts and circumstances unique to each individual case in fashioning a division of marital property and an award of periodic alimony. Brewer v. Brewer, 695 So.2d 1 (Ala.Civ.App.1996). The only limitation on the trial court’s broad discretion in dividing the marital estate is that the property division must be equitable under the circumstances of the particular case; the task of determining what is equitable falls to the trial court. Cantrell v. Cantrell, 773 So.2d 487 (Ala.Civ.App.2000). A trial court’s determination, as to alimony and the division of property following an ore tenus presentation of the evidence is presumed correct. See Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993). “This presumption of correctness is based on the trial court’s being in the unique position of being able to observe the witnesses and to assess their demeanor and credibility. Hall v. Mazzone, 486 So.2d 408 (Ala.1986).” Walls v. Walls, 860 So.2d 352, 357 (Ala.Civ.App.2003).
“Each case is decided on its own peculiar facts and circumstances. Criteria which should be considered by the trial court when awarding alimony and dividing property include the length of the parties’ marriage, their ages, health, station in life, and future prospects; the source, value, and type of property owned; the standard of living to which the parties have become accustomed during the marriage and the potential for maintaining that standard; and, in appropriate situations, the conduct of the parties with reference to the cause of divorce.”
Currie v. Currie, 550 So.2d 423, 425 (Ala.Civ.App.1989).
The trial court awarded the husband one of the two major marital assets: the marital home and surrounding acreage, with an equity of between $23,000 and $30,000, on which the monthly mortgage payments are $436.20. The court awarded the wife the other major marital asset: the 2001 Ford Escape vehicle, valued at $25,000 with monthly payments of $479. The value and the monthly indebtedness on these two marital assets are almost identical.
The trial court determined not to award the wife any portion of the husband’s profit-sharing/401(k) account. Section 30-2-51(b), Ala.Code 1975, provides:
“(b) The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that the following conditions are met:
“(1) The parties have been married for a period of 10 years during which the retirement was being accumulated.
“(2) The court shall not include in the estate the value of any retirement *431 benefits acquired prior to the marriage including any interest or appreciation of the benefits.
“(3) The total amount of the retirement benefits payable to the non-eov-ered spouse shall not exceed 50 percent of the retirement benefits that may be considered by the court.”
(Emphasis added.)
The husband’s retirement account was valued at $28,454, $18,000 of which was accumulated during the marriage. The testimony at trial was that the account was entirely funded by the husband’s employer; no marital assets were expended to fund it. Although the trial court was not required to award the wife a portion of the husband’s retirement account, the question before us is whether the failure to make such an award, under all the circumstances of the ease, was an abuse of discretion. We conclude that it was, especially in light of the periodic-alimony award of only $100 per month. See Mayhann v. Mayhann, 820 So.2d 836 (Ala.Civ.App.2001) (holding that an award to the wife of an automobile, a bedroom suite, a set of cookware and china, and periodic alimony of $350 per month for two years was inequitable). See also Adams v. Adams, 778 So.2d 825 (Ala.Civ.App.2000) (reversing a divorce judgment in which the trial court failed to award the wife, after a 41-year marriage, any portion of the husband’s retirement account because it thought she would squander the assets).
Even if the trial court concluded, based on its assessment of the wife’s demeanor and credibility, that the wife had exaggerated her health problems, and even if the court determined that the wife was not totally disabled but could engage in limited employment, it is apparent that the wife’s earning potential does not approach the husband’s earning potential. Moreover, the divorce judgment does not provide the wife with a home or the means of obtaining a home. We conclude that we must reverse the trial court’s property division, together with its periodic-alimony award, because of the inequity of these awards. On remand, the trial court is instructed to adjust the property division and periodic-alimony award to make them more equitable.
The wife’s request for an attorney fee on appeal is granted in the amount of $1,000.
REVERSED AND REMANDED.
' YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK; JJ., concur.

. The wife alleged in her complaint and testified at trial that the parties had a common-law marriage for two years before they were ceremonially married. Despite the fact that *428 the husband admitted those allegations in his answer to the complaint, the husband testified at trial that the parties had not had a common-law marriage. We need not resolve this question because it is not pertinent to any issue presented in this appeal. The parties agree that, for purposes of determining the wife's eligibility for a portion of the husband's retirement benefits, they had been married for at least 10 years at the time of the filing of the complaint for divorce. See § 30 — 2—51(b)(1), Ala.Code 1975; Smith v. Smith, 836 So.2d 893, 899 (Ala.Civ.App.2002).