THOMAS, Judge.
Diane Helen Allen (“the wife”) and Mark James Allen (“the husband”) were married in 1985. In May 2007, the husband sued the wife for a divorce. The parties attempted to mediate an agreement; however, the mediation was ultimately unsuccessful. After a trial in May 2008, the trial court divorced the parties on the ground of incompatibility, awarded the wife a 1981 Corvette automobile, awarded the husband a 2006 Ford Expedition sport-utility vehicle and made him solely responsible for the $33,000 to $34,000 debt associated with that vehicle, made the husband responsible for the payment of a $3,500 credit-union loan, awarded the husband a restored 1984 Chris Craft boat, and awarded the parties the remaining personal property in their respective possession at the time of the trial. The trial court further ordered that the marital residence remain on the market and be sold. The judgment required that the proceeds of the sale be used first to exhaust the mortgage debt associated with the marital residence and then to pay off credit-card debt accumulated by the parties; any remaining proceeds from the sale of the marital residence, which were expected to be around $30,000, were awarded to the wife. The husband was to be responsible for the mortgage payments on the marital residence until its sale. Pursuant to the judgment, after the sale of the marital residence was accomplished, the husband would be required to pay the wife $600 per month in alimony until his retirement, after which the wife would receive certain pension benefits.
The wife appealed from the divorce judgment; on August 11, 2009, we dismissed the appeal because two outstanding contempt motions had not been addressed by the trial court. Allen v. Allen (No. 2071113, Aug. 11, 2009), - So.3d - (Ala.Civ.App.2009) (table). The trial court denied the contempt motions in an amended judgment entered on October 7, 2009, and the wife appeals a second time. On appeal, the wife argues essentially that the trial court abused its discretion in three ways: by not granting a divorce on the ground of adultery, by not awarding the wife the marital residence, and by not awarding the wife a sufficient amount of alimony. The wife also appeals the denial of an award of attorney fees by the trial court and requests an attorney fee on appeal.
The husband, who was 46 years old at the time of trial, is employed by Norfolk Southern Railway. His base yearly salary is $74,658. In February 2007, the husband was a awarded a $10,000 bonus; he testified that his February 2008 bonus was only $5,000. He testified that he “took home” about $3,500 from the $5,000 bonus check. The husband has a retirement account through his employer; his retirement account contained $54,784.24 as of June 2007. *963 He said that had taken out two loans against the account totaling $9,463.12.
The wife was 58 years old at the time of trial. She is not regularly employed and receives Social Security disability benefits in the amount of $600 per month. She did testify that she had previously sat with some elderly or ill people; she said that they had given her “gifts” of money. The wife said that she had purchased some significant items with the “gifts,” including a set of tires and a boat motor. However, the wife said that she had not been able to continue sitting with people during the pendency of the divorce action.
The wife has had at least 'three forms of cancer, including cervical, kidney, and thyroid. She has only one functioning kidney, and one quarter of it has been removed. The wife had surgery to remove a tumor from her back during the pendency of the divorce action. The wife also suffers from chronic obstructive pulmonary disease (“COPD”), diabetes, and depression. She is on at least four prescription medications, including Januvia, a diabetes medication; Lexapro, an antidepressant; Synthroid, a thyroid medication; and Advair, an inhaled medication often prescribed for asthma symptoms but likely prescribed for her COPD. The monthly cost of the wife’s medications and diabetic supplies is $744. The testimony at trial indicated that the husband’s employer did not offer the option of continued insurance for the wife under COBRA.
The husband testified that he had begun dating another woman, Laura Stinson, in November 2007, after the parties completed mediation. The husband said that he thought that he and the wife had reached an agreement on the divorce issues and that everything was “final” when he began dating Stinson. The wife, however, testified that she had suspected an affair much earlier based on the husband’s staying up late on the computer and his sneaking outside for late-night telephone calls. The wife also testified that the husband had admitted to her before he filed the divorce complaint that he was having an affair with Stinson. The wife said that she had tried to gather evidence to prove the longstanding nature of the husband’s relationship with Stinson, but she was unable to access the husband’s cellular-telephone records or the parties’ computer.
The parties had listed the marital residence for sale in October 2007. According to the wife, she had agreed to list the marital residence for sale for $174,900, which was the price the realtor had suggested and the value of the marital residence based upon an appraisal. The husband testified that they had received no offers at the original list price, so he had reduced the price to $169,900. The parties disagreed on the amount of the outstanding mortgage associated with the marital residence; the wife testified that it was $124,000, while the husband testified that it was $127,000 or $128,000.
The husband testified that the mortgage payment on the marital residence was $960 per month. He explained that the debt associated with the parties’ 2006 Ford Expedition was $33,000; he said that his monthly payment on that vehicle was $602. The parties had two Chase credit cards with a combined balance of $12,500. The husband also testified that he paid $200 per month to repay a loan from the credit union, which had a remaining balance of $3,500. Further, the husband testified that he had been paying all the debts of the parties and all the bills associated with the marital residence except for the cable bill and the residential telephone bill, both of which services he had had disconnected. The husband paid the parties’ cellular-telephone bill, which apparently was a family- *964 type plan, and both parties’ cellular-telephone use was reflected on one bill.
The husband testified that the parties owned a 1981 Corvette that was worth $13,700. The husband testified that the Corvette was paid for, but then he testified that it might still have $3,000 in debt associated with it. The wife testified that the Corvette had been a gift to her from the husband and that it was worth $20,000. The parties also owned a restored 1985 Chris Craft boat, which the husband testified was worth $3,900; the wife testified that the boat was worth $20,000.
At trial, the husband testified that he wanted the trial court to order the house sold, as the parties had already planned, and to order that the proceeds be used to satisfy the mortgage and other marital debt before the remaining proceeds were divided equally. The wife, however, testified that she wanted to be awarded the marital residence, with its associated debt, and to have the husband pay her $2,600 per month in alimony. The husband testified that he understood that he would likely have to pay the wife some amount of alimony after the house was sold; he also agreed that he should be responsible for the mortgage on the residence and all debts until the residence was sold. The husband also testified that he was willing to give the wife half of the value of his retirement account as of May 2007.
The wife argues that the trial court erred by not divorcing the parties on the ground of adultery. Although the wife testified that she had suspected that the husband was having an affair before he filed for divorce and although the wife testified that the husband had admitted the affair to her, the husband testified that he had not begun his relationship with Stinson until after the parties had mediated their divorce in November 2007. No other evidence of adultery was presented at trial. The wife’s testimony of the husband’s alleged confession of adultery, alone, is not sufficient evidence upon which to base a divorce on the ground of adultery. Yates v. Yates, 676 So.2d 365, 366 (Ala.Civ.App.1996) (“The testimony of one spouse as to the other spouse’s confession of adultery is, alone, insufficient to warrant a divorce on the grounds of adultery, and that testimony is admissible only in corroboration of other evidence tending to establish the offense.”). Without evidence corroborating the wife’s testimony of the confession or evidence establishing more than a mere suspicion of adultery, the trial court could not have granted the divorce on the ground of adultery. Yates, 676 So.2d at 366. Thus, we find no error in the trial court’s decision to grant the divorce on the ground of incompatibility.
The wife’s next arguments concern the property division and alimony award. The trial court has wide discretion over alimony and the division of property, and it may use whatever means are reasonable and necessary to equitably divide the parties’ property. Grimsley v. Grimsley, 545 So.2d 75, 77 (Ala.Civ.App.1989). The only limitation on that discretion is that the division of property be equitable under the circumstances of the particular case, and the task of determining what is equitable falls to the trial court. Ross v. Ross, 447 So.2d 812, 813 (Ala.Civ.App.1984). The trial court’s judgment is presumed correct and will not be reversed unless it is so unsupported by the evidence as to be unjust and palpably wrong. Grimsley, 545 So.2d at 76. “The trial court has no rigid standards on which to base the determination of alimony and division of property.” Jones v. Jones, 560 So.2d 1092, 1093 (Ala.Civ.App.1990). In making the division, the trial court may consider several factors, including the parties’ respective present and future earning *965 capacities, their ages and health, their conduct, the duration of the marriage, and the value and type of marital property. Lutz v. Lutz, 485 So.2d 1174, 1176 (Ala.Civ.App.1986). This court must consider the issues of property division and alimony together when reviewing the decision of the trial court, Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App.1995), and, because the facts and circumstances of each divorce case are different, this court must also consider the particular facts and circumstances of the case being reviewed. Murphy v. Murphy, 624 So.2d 620, 623 (Ala.Civ.App.1993).
The wife argues that, in light of the husband’s alleged adultery, she should have been awarded the marital residence. As noted above, the husband did not admit committing adultery before the parties had separated, and the evidence was insufficient to support a finding of adultery. Yates, 676 So.2d at 366. Notably, the wife had requested in her answer that the marital residence be sold and the proceeds divided. In addition, the parties had already placed the marital residence on the market. The marital residence was the parties’ only significant asset, and its sale and the award of the remaining proceeds from its sale to the wife, after the satisfaction of the mortgage and the retirement of the credit-card debt, is equitable.
The wife also complains that the trial court abused its discretion in awarding her only $600 per month in alimony. She contends that she requires a larger award of alimony in order to meet her expenses. Once the marital residence is sold, the wife will need to secure a residence; she testified at trial that she would not be able to purchase a new residence with the approximately $30,000 she would receive once the marital residence was sold. Thus, the wife will likely incur rental expense of some amount for an apartment or house. The wife’s significant monthly medical expenses will exceed her $600 per month in disability income.
The husband’s net income per month is around $3,000. He must pay the remaining indebtedness on the 2006 Ford Expedition sport-utility vehicle; the payments on that vehicle are $602 per month. He must also pay $200 per month on the credit-union loan. Thus, after paying alimony, the loan payments, and the vehicle payments, the husband would have approximately $1,600 per month in income to pay for his living expenses. In light of the wife’s limited income, her health problems and the expenses associated with them, and the length of the parties’ marriage, we agree with the wife that the trial court abused its discretion by awarding her only $600 per month in alimony when the husband has the ability to pay more and she does not have the ability to meet her basic needs on her own disability income. See Kelly v. Kelly, 892 So.2d 426, 431 (Ala.Civ.App.2004) (reversing a property division and a $100 alimony award when the evidence established that the wife had far less earning potential than the husband and the trial court’s award had not left the wife with means to secure a home); Mayhann v. Mayhann, 820 So.2d 836, 839 (Ala.Civ.App.2001) (reversing a property division and alimony award of $350 because the awards were inequitable and left the wife nothing but an automobile, a bedroom suite, and cookware and china).
The wife’s final argument is that the trial court and this court should award her an attorney fee. Typically, the award of an attorney fee in a divorce case is a matter within the trial court’s discretion.
“Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be re *966 versed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). ‘Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.’ Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993).”
Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996) (emphasis added).
The evidence at trial established that the wife had $600 per month in disability income compared to the husband’s $3,000 per month in net income from his employment. We are reversing the trial court’s alimony award because it is inequitable under the circumstances of this case. In light of the fact that the wife has meager resources with which to pay her attorney and in light of our reversal of the alimony award, we reverse the trial court’s judgment insofar as it failed to award the wife any amount for an attorney fee. See Murphree v. Murphree, 579 So.2d 634, 637 (Ala.Civ.App.1991) (reversing a trial court’s judgment insofar as it failed to award the wife an attorney fee in light of her “meager finances”). On remand, the trial court should consider awarding the wife a reasonable attorney fee.
The wife is awarded an attorney fee of $1,500 on appeal.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
BRYAN, J., concurs in the result, without writing.