BRYAN, Judge.
M.S.M. (“the wife”) appeals from a judgment entered by the Montgomery Circuit Court (“the circuit court”) that divorced her from M.W.M. (“the husband”).

Procedural History

The husband filed a complaint for a divorce in the circuit court on April 14, 2009, and the wife subsequently filed an answer and a counterclaim for a divorce. The divorce action was docketed in the circuit court as case no. DR-09-347. The husband filed a motion to appoint a guardian ad litem on behalf of the parties’ daughter, the only child born of the parties’ marriage (“the child”), who was born in September 1996. The circuit court appointed a guardian ad litem on behalf of the child on May 4, 2009.
On May 21, 2009, the guardian ad litem, in case no. DR-09-347, filed a motion styled “Motion for Finding of Dependency” in the circuit court.[1] The guardian ad litem alleged that the child was dependent because she was being emotionally abused by the husband and the wife and because the husband and the wife had not exercised proper parental care and control necessary for the child’s well-being. The guardian ad litem requested that a finding of dependency be made based on testimony presented at a pendente lite hearing that had been conducted before a special master of the circuit court on May 19, 2009, and that the circuit court “bifurcate the dependency action from the divorce action.”
On June 23, 2009, a special master of the circuit court filed a report of reference based on testimony presented before the special master at the May 19, 2009, pen-dente lite hearing. For pendente lite purposes, the special master recommended, among other things: (1) that the child be declared dependent based on alleged mental and emotional abuse inflicted by the husband and the wife; (2) that the parties share legal custody of the child and that the wife exercise primary physical custody of the child; (3) that the parties and the child be required to submit to psychological evaluations; (4) that the wife be allowed temporary exclusive use and possession of the parties’ marital residence; (5) *630 that the husband pay $669 a month in child support to the wife and $1,500 a month in alimony to the wife; and (6) that the wife be required to pay all expenses associated with the marital residence. On the same day, the circuit court entered an order approving and confirming the report of reference, and it entered a separate order requiring the husband, the wife, and the child to submit to psychological examination by Dr. Warren Brantley.
The circuit court, also on June 23, 2009, entered an order purporting to transfer the issues related to the child’s custody to the Montgomery Juvenile Court (“the juvenile court”). In that order, the circuit court purported to find the child dependent based on the recommendation of the special master and the guardian ad litem’s motion seeking to find the child dependent.[2] The purported juvenile action was assigned case no. JU-08-509.01. The same circuit-court judge presided over the divorce action in the circuit court and the purported juvenile action in the juvenile court.
After conducting a hearing on September 17 and September 22, 2009, the special master entered a second order of reference on October 2, 2009, that recommended, among other things, that the parties continue to share legal custody of the child but that physical custody of the child should be transferred to the husband, subject to the wife’s visitation with the child. The special master also recommended that the husband pay the mortgage and utility bills for the marital residence and pay the wife $200 a month in alimony. The circuit court entered an order approving and confirming the special master’s report of reference.
In October 2009, the guardian ad litem filed a motion recommending that the wife and the husband submit to evaluation by a board-certified psychiatrist. On December 16, 2009, the circuit-court judge, purporting to act as a juvenile-court judge, issued an order, based on “extensive argument from counsel,” that suspended the wife’s visitation with the child until further notice, that ordered that any communication between the wife and the child be recorded, and that ordered the wife and the husband to submit to psychiatric evaluation.
On December 24, 2009, the wife filed a petition in the juvenile court alleging that the child was dependent; that petition was assigned case no. JU-09-509.02. The wife alleged that the child was in immediate danger of physical and/or emotional harm because the husband was isolating the child from the wife. In her dependency petition, the wife stated that she should be awarded sole physical custody of the child and that the husband should be awarded supervised visitation. On January 12, 2010, the guardian ad litem filed a motion to allow the wife supervised visitation with the child and to allow the wife to communicate with the child using the speakerphone function of a telephone.
*631 On January 7, 2010, January 25, 2010, and February 1, 2010, a final ore tenus hearing was conducted on the divorce action and the juvenile actions. The circuit court entered a divorce judgment on March 11, 2010, in case no. DR-00-347 that purported to consolidate case nos. JU-09-509.01 and JU-09-509.02 for the purpose of issuing one judgment, and, in that judgment, case nos. JU-09-509.01 and JU-09-509.02 were “closed.” Pursuant to the divorce judgment, the circuit court awarded the husband sole legal and physical custody of the child and awarded the wife supervised visitation with the child every other Saturday from 10:00 a.m. until 2:00 p.m. The wife’s supervised visitation with the child was to continue until the child’s counselor and the husband agreed that the wife should have unsupervised visitation. At that point, the wife would be awarded “standard visitation,” as specifically set forth in the divorce judgment. The wife was ordered to pay child support in the amount of $100 per month, but that obligation was suspended by the circuit court due to the wife’s unemployment. The parties were ordered to equally share responsibility for any of the child’s noncov-ered medical expenses.
The husband was awarded all title to and interest in the parties’ marital residence, and the wife was ordered to immediately vacate the marital residence. However, pursuant to the judgment, the husband could either (1) immediately place the marital residence for sale and, upon sale of the marital residence, equally divide the net proceeds of the sale with the wife or (2) reside in the marital residence and purchase the wife’s one-half interest in the net equity of the marital residence. The wife was awarded 30% of the husband’s vested retirement benefits, an amount equal to $36,655. Additionally, the wife was awarded rehabilitative alimony in the amount of $200 a month for approximately 9 months. The parties were each awarded a vehicle, the bank accounts in their respective names, and certain specific pieces of personal property. The wife was permitted to retain the parties’ income-tax refund from 2008 in order to offset certain expenses incurred by the husband while the parties had been separated. Each party was ordered to pay all debts incurred in his or her individual name.
The wife subsequently filed a motion to stay enforcement of the divorce judgment and a motion for postjudgment relief pursuant to Rule 59, Ala. R. Civ. P. In her postjudgment motion, the wife argued, among other things, that the divorce judgment was nonfinal. The husband filed a response to the wife’s request for post-judgment relief in which he argued, among other things, that the judgment was final and left nothing more for the circuit court to adjudicate. The wife’s motion to stay enforcement of the divorce judgment was denied, and, after a hearing on her post-judgment motion, the wife’s request for postjudgment relief was denied. The wife subsequently filed a timely notice of appeal.

Issues

On appeal, the wife presents several issues for this court’s review: (1) whether the juvenile court lacked jurisdiction over her dependency petition and the guardian ad litem’s purported dependency petition; (2) whether the circuit court erred in awarding custody of the child to the husband; (3) whether the circuit court erred in requiring the wife to have supervised visitation with the child; (4) whether the circuit court’s visitation order was erroneous even if supervised visitation is required; (5) whether the circuit court erred by requiring the wife to pay child support and one-half of any noncovered medical expenses of the child; (6) whether the *632 circuit court erred in its award of alimony to the wife; and (7) whether the circuit court erred by failing to require the husband to pay the wife’s attorney’s fees.
Facts[3]
The parties were married in 1990, and, as noted above, the child was born in 1996. It was undisputed that the husband had been the sole financial provider for the family throughout the parties’ marriage. At the time of trial, the husband was employed as a professor by a university and he earned $5,778.30 a month, 10 months out of the year. His salary was not guaranteed for two months out of the year, but he could earn income if there was demand for his classes during the summer. The wife had a college degree in botany, but the evidence indicated that the wife had worked during the marriage only for a short time as a substitute teacher and as a pharmacy technician. At the time of trial, she had not worked in more than 13 years. According to the wife, during the parties’ marriage she had acted, at times, as the husband’s secretary, and she stated that she had homeschooled the child until August 2009, when the child started attending a public school.
According to the wife, it took her several months to obtain employment after the parties separated in April 2009. The wife began working part-time as a substitute teacher in late September 2009. The wife’s 2009 W-2 tax form indicated that she had earned $1,537 that year. The wife stated that she had been living in the marital residence since the husband moved out in April 2009 and that the husband had been paying the mortgage and the utility bills on the marital residence. The wife alleged that the husband had never paid her $1,500 a month in alimony, as initially ordered by the circuit court, but that he had paid the mortgage and the utility bills for the marital residence during that time instead. As a result, the wife alleged that she had incurred credit-card debt because .she had been unemployed during that time. The wife testified that she had purchased blinds for the marital residence, a computer, and a bed for the child using a credit card.
The parties moved from Georgia to Alabama in January 2007, and the parties purchased the marital residence in October 2008 for $152,500. At the time of trial, the unpaid principal on the parties’ mortgage was $120,372.89. The husband stated that he had paid the monthly mortgage, which was $854 a month, and that his monthly expenses totaled approximately $2,900 a month. The husband stated that his parents had provided him financial assistance since the parties separated and that he had only $400 in his checking account at the time of trial. The parties owned two vehicles debt-free, but the record does not disclose the value of those vehicles. The husband had individual credit-card debt, incurred during the marriage, which totaled approximately $800 at the time of trial.
The wife stated that she needed temporary financial assistance of approximately $850 a month, i.e., the amount of the monthly mortgage payment, from the husband until she was able to pay the mortgage on her own. The wife estimated that six months would be a sufficient amount of time to receive financial assistance from the husband to give her time to get on her feet because her brother was helping her start a business and she would continue substitute teaching. At the time of trial, *633 the wife was receiving $65 a month in food stamps, but, during the pendency of the divorce action, she had been receiving as much as $200 a month in food stamps.
According to the husband, his retirement with his current employer had not vested, but he had vested retirement from a former employer. As of June 2009, the husband’s vested retirement benefits totaled approximately $122,183. It was undisputed that this amount had accumulated during the parties’ marriage. The husband stated that he had been a tenured professor at his former employer, also a university, and that he had resigned his position at that university because one of his supervisors had made his life miserable. However, the wife testified that the husband had resigned from his tenured position with his former employer because his former employer had required that he submit to a psychological evaluation in order to remain employed. The husband stated that his annual income had declined by approximately $30,000 due to his resignation because his new employer did not initially pay as much as his former employer had.
The child, who was 13 years old at the time of trial, testified during the trial with the husband and the wife present in the courtroom, despite the fact that the child stated that she preferred that the husband and the wife were not present and despite the fact that the child stated that having the wife present in the courtroom made her afraid to answer questions because she did not know how the wife would react to her testimony.[4] The child testified that she liked going to public school and that she had made friends at school. The child stated that she did not enjoy visiting her paternal grandparents because the wife had told her that they were bad people. However, she stated that she really enjoyed visiting the husband’s other relatives in Mississippi. The child had never met any of the wife’s relatives. The child stated that, before she had visited her paternal grandparents, the wife had told her to do things during her visit to embarrass or aggravate her paternal grandparents and that she thought that the wife had told her to act that way so that her paternal grandparents would not want her to come visit them again.
The child also stated that the wife had called the husband a “lousy human being” but that the husband had never said anything negative about the wife to her. According to the child, if she made a bad grade in school, the husband would tell her to do better next time, but the wife would scream at her “for a pretty long time” until her ears hurt and would tell the child that her grades were unacceptable. The child stated that she wanted to live with the husband and visit the wife. The child acknowledged that she had testified at a pendente lite hearing in September 2009 that she wanted to live with the wife; however, she also stated that she was glad when the husband was awarded pendente lite custody approximately one week later.
Lori Parsons, the child’s counselor, testified that she began counseling the child in May 2009 and that, at that time, the child was shy, withdrawn, and very unsure of what to say. Parsons stated that she had counseled the child on a weekly basis and that sometime around October 2009 she noticed a change in the child’s behavior. *634 According to Parsons, the child had blossomed and her emotional state had improved in that she was happy, she felt less pressured, and she was able to communicate better. The child indicated to Parsons that she wanted to live with the husband, and, according to Parsons, the child had told her things during counseling sessions, such as that the wife had told the child to do things that she should not do, which caused Parsons to be concerned about the child’s safety while in the care of the wife.
Brenda Lampley, the wife’s counselor, testified that she began counseling the wife in May 2009. According to Lampley, the wife had indicated to her that she felt that she had raised the child to the best of her ability and that she would be “ok” with the husband receiving custody of the child. Lampley noted that, on one occasion in June 2009, the wife arrived for her appointment with the child, and Lampley described the wife’s interaction with the child as age-inappropriate because the wife sat the child on her lap and told Lampley about her relationship with the child and how she would like the child to be. Lamp-ley testified that the child appeared to be uncomfortable with the wife’s behavior. Also, Lampley stated that the child was very aware of right and wrong and that she would characterize the wife’s behavior, regarding inducing the child to do wrong, as manipulative. Lampley recommended that the wife remain in counseling for her emotional stability.
Dr. Don Hill, the husband’s counselor, testified that he first began counseling the husband on April 21, 2009. Dr. Hill stated that his purpose was to help the husband make clear decisions regarding what was best for the child and to assist in reconciliation with the wife, if possible. Dr. Hill indicated that the husband had shown improvement throughout his counseling sessions. The wife attempted to submit the husband’s counseling records with Dr. Hill into evidence, but an objection made by the guardian ad litem and the husband was sustained and the records were not admitted.
Dr. Brantley, a psychologist and the senior court therapist for Montgomery County, testified that he had performed psychological evaluations on the husband, the wife, and the child. Dr. Brantley administered the Minnesota Multiphasic Personality Inventory (“MMPI”) on the husband and the wife. According to Dr. Brantley, the husband had the most unique MMPI results that he had ever seen in light of the fact that his interview with the husband was normal. Dr. Brant-ley testified that the husband’s answers indicated a “fake good,” meaning that the husband had put his best foot forward during the examination, but that his test scores were not consistent with a typical “fake good” MMPI score. Dr. Brantley stated that the husband’s unusual test scores indicated only that he was a person with a lot of idiosyncrasies in his personality. He stated that there was no indication of mental illness, of an inability to parent, or of a propensity to develop a mood disorder or mental illness. Dr. Brantley did not believe that the husband’s test scores warranted further evaluation by a psychiatrist, but he stated that re-administration of the MMPI could be done to perhaps obtain more valid results. Dr. Brantley did not find any indication of a significant dysfunction with either the husband or the wife.
The wife submitted to the court-ordered psychiatric evaluation in December 2009, and the record indicates that no psychiatric symptoms were found. The husband stated that he had also submitted to the court-ordered psychiatric evaluation but *635 that, as of the date of trial, he had not received any results of his evaluation.[5]
The wife’s testimony indicated that the husband had a violent temperament, and she alleged that the husband had thrown “every object,” including the parties’ dog, and that he had slammed his cellular telephone against a wall. Further, the wife testified regarding an incident before the parties separated in which the husband went into a rage and stated that he would commit suicide if the parties did not divorce. According to the wife, during the husband’s rage, the child had scratched herself on her arms with sewing needles. The wife also testified that the husband had previously threatened to commit suicide in order to make his former employer feel bad.
The husband testified that the wife had been the primary caregiver of the child and that the wife had not allowed anyone, including the husband, to have a close relationship with the child. The husband testified that the wife was controlling, especially regarding the child’s relationships, but that he was willing to encourage a relationship between the child and the wife if he was awarded custody of the child. The husband stated the he thought that the wife’s visitation with the child should be supervised, and he stated that he was willing to work on a solution to choose a third party to supervise the wife’s visits with the child.

Discussion

I. Jurisdiction
Before we address the wife’s arguments on appeal, we must first address a jurisdictional argument presented by the husband in his brief on appeal. Despite his assertion in his response to the wife’s postjudgment motion, the husband now argues on appeal that the divorce judgment is nonfinal because, he says, it does not completely adjudicate the issues regarding the wife’s visitation or the wife’s child-support obligation. We must address the husband’s arguments because, “[a]s a general rule, this court’s appellate jurisdiction extends only to final judgments.” Campbell v. Taylor, [Ms. 2091072, January 21, 2011] — So.3d -, (Ala.Civ.App.2011).
“ ‘It is a well established rule that, with limited exceptions, an appeal will lie only from a final judgment which determines the issues before the court and ascertains and declares the rights of the parties involved.’ Taylor v. Taylor, 398 So.2d 267, 269 (Ala.1981). A ruling that, determines fewer than all the claims is ordinarily not final as to any of the parties or as to any of the claims.”
Kelley v. Thomas, 878 So.2d 1168, 1171 (Ala.Civ.App.2003).
The provision in the judgment regarding the wife’s visitation gives a specific time and day for the wife to exercise supervised visitation, and, once agreed upon by the child’s counselor and the husband, the judgment gives specific times and days for the wife to exercise unsupervised visitation. The judgment allows the parties to choose a third party to supervise visitation, and it permits the parties to reach an alternative agreement regarding standard visitation. The husband argues that those provisions do not conclusively determine the rights and liabilities of the parties, and he further argues that the provision allowing the counselor to assist in choosing when to implement unsupervised visitation *636 “leaves matters to be sorted by the parties without the benefit of the finality of a court order.” Although certain aspects of the visitation award may be improper,[6] we cannot conclude that those provisions render the divorce judgment nonfinal. See Kelley v. Thomas, supra (dismissing an appeal as being from a nonfinal judgment when the trial court failed to rule on a request for visitation). Compare, e.g., Pratt v. Pratt, 56 So.3d 638 (Ala.Civ.App.2010) (reversing the award of visitation because it was not sufficiently specific and left too much discretion regarding the noncustodial parent’s visitation to the custodial parent and a third party).
The husband also argues that the divorce judgment is nonfinal because it suspends the wife’s child-support obligation pending further orders from the circuit court due to the wife’s unemployment. This court has held that a lower court’s reservation of the issue of child support pending the occurrence of a specific event, such as submission of the appropriate child-support forms, renders a judgment nonfinal, see Naylor v. Naylor, 981 So.2d 440, 441 (Ala.Civ.App.2007), and that a lower court’s failure to actually determine an amount of child support owed by a party also renders a judgment nonfinal, see Turner v. Turner, 883 So.2d 233, 234 (Ala.Civ.App.2003). However, in Parker v. Parker, 946 So.2d 480, 486 (Ala.Civ.App.2006), this court determined that a divorce judgment that reserved ruling on the issue of child support due to the noncustodial parent’s “apparent lack of income” was “as final as any child-support judgment can be.” We believe that the circuit court’s judgment in this case is analogous to the judgment discussed in Parker, in which the non-custodial parent’s child-support obligation was indefinitely suspended because of her lack of income. Accordingly, we conclude that the divorce judgment entered by the circuit court was a final judgment.
 We now turn to the wife’s argument on appeal that the dependency petitions did not invoke the jurisdiction of the juvenile court and that, therefore, the juvenile court did not have jurisdiction to make a custody determination as to the child. In M.P. v. C.P., 8 So.3d 316, 318 (Ala.Civ.App.2008), this court stated that,
“ ‘[w]hen a circuit court acquires jurisdiction over the issue of child custody pursuant to a divorce action, it thereafter retains jurisdiction over that issue to the exclusion of the juvenile court.’ Ex parte K.S.G., 645 So.2d 297, 299 (Ala.Civ.App.1992). There are but two exceptions to the rule that the juvenile court cannot exercise jurisdiction over a child once the circuit court has acquired jurisdiction: ‘when there are emergency circumstances which threaten the immediate welfare of the child’ or when a separate dependency action is instituted. Ex parte K.S.G., 645 So.2d at 299-300.”
Our review of the record reveals several jurisdictional deficiencies related to the circuit court’s attempt to adjudicate the child dependent in case no. JU-09-509.01, as set for in notes 1 and 2, supra. Because the guardian ad litem failed to file the dependency petition in juvenile court, in conformance with § 12-15-114(a) and § 12-15-120, Ala.Code 1975, the juvenile court was never vested with jurisdiction in case no. JU-09-509.01.[7] Moreover, the ju *637 venile court was not vested with jurisdiction when the circuit court purported to transfer the matter to juvenile court after it found the child dependent. See § 12-15 — 114(a); and C.D.S. v. K.S.S., 963 So.2d at 130 n. 5 (recognizing that the circuit court could not confer jurisdiction on a juvenile court by transferring a custody action to the juvenile court when the circuit court had jurisdiction over matters of custody pursuant to its continuing jurisdiction conferred by the parties divorce action). Therefore, any purported order in case no. JU-09-509.01 is void for lack of subject-matter jurisdiction. See C.D.S. v. K.S.S., 963 So.2d at 129 n. 4.
Regarding case no. JU-09-509.02, the wife’s dependency petition indicated that it had been received as a verified complaint by an intake officer with the juvenile court. Assuming that the wife’s dependency petition properly invoked either the emergency jurisdiction of the juvenile court or the dependency jurisdiction of the juvenile court, the circuit-court judge, acting as the juvenile-court judge, “closed” case no. JU-09-509.02 after conducting a hearing on the wife’s petition, without entering an emergency order for protection or restraint on behalf of the child, see § 12-15-138, Ala.Code 1975, and without finding the child to be dependent, see § 12 — 15—310(b), Ala.Code 1975 (when a child’s dependency has not been proven by clear and convincing evidence, the dependency petition must be dismissed).
We address the jurisdictional issues presented by the wife on appeal because the wife indicates in her brief that any custody determination made in the underlying action is void because the judgment did not contain a finding of dependency. We agree that a juvenile court does not have jurisdiction to make a custody determination in a dependency action if the child is not adjudicated dependent by the juvenile court. See § 12 — 15—310(b); and L.B. v. R.L.B., 53 So.3d 969 (Ala.Civ.App.2010) (quoting K.C.G. v. S.J.R., 46 So.3d 499, 501-02 (Ala.Civ.App.2010)) (“ ‘If a juvenile court determines that the child is not dependent, the court must dismiss the dependency action.’ ”). However, because the juvenile court did not obtain jurisdiction in case no. JU-09-509.01, and because the juvenile court did not act on the jurisdiction it may have acquired in case no. JU-09-509.02, the issue of the child’s custody remained within the jurisdiction of the circuit court as part of its jurisdiction to decide issues collateral to the divorce action.[8] Thus, the circuit court *638 retained jurisdiction to decide the issue of custody based on the best interest of the child, which was the standard used in the divorce judgment.[9] See M.P. v. C.P., supra.
II. Custody
On appeal, the wife argues that the circuit court erred in awarding the husband custody of the child because the evidence regarding the husband’s mental state and his commission of acts of domestic violence demonstrated that he was unfit to have custody of the child. The wife argues that the circuit court erred by excluding evidence related to the husband’s mental state, such as the husband’s counseling records with Dr. Hill and testimony related to a prescription the husband obtained in 2007.
During the trial, the guardian ad litem objected to the wife’s attempt to submit the husband’s counseling records with Dr. Hill into evidence because, the guardian ad litem asserted, the records were protected by the psychologist-patient privilege found in § 34-26-2, Ala.Code 1975.[10] The husband did not waive that privilege during trial. The circuit-court judge concluded that the counseling records were privileged and, thus, inadmissible; however, the circuit-court judge allowed Dr. Hill to testify regarding non-privileged information.
In Black v. Black, 625 So.2d 450 (Ala.Civ.App.1993), the wife in that case appealed from a judgment of divorce that awarded custody of the parties’ three children to her husband. On appeal, the wife alleged that the trial court had erroneously allowed her psychological records to be admitted into evidence. Id. at 451. In affirming the admission of her psychological records, this court stated:
“In Matter of Von Goyt, 461 So.2d 821 (Ala.Civ.App.1984), this Court determined that where the question of one party’s mental state is clearly in controversy, and a proper resolution of a custody issue requires disclosure, the privileged medical records and the psychologist-patient privilege must yield. In the instant case, the wife’s mental state was relevant to the issue of her fitness to parent the children and in determining the best interests of the children, and, therefore, was clearly in controversy. A trial court has wide latitude in the evidence it may consider in a child custody determination. Von Goyt, supra. The best interests of the children in a custody matter are the paramount consideration, and a party’s physical, financial, and mental ability to care for the children must be considered. Von Goyt, supra. The resolution of the custody issue in the instant case required disclosure of privileged information to determine the best interests of the children.”
625 So.2d at 451-52.
The record reveals that the mental states of both the husband and the wife in *639 this case were clearly in controversy. During the pendency of the divorce action, the circuit court had ordered the husband and the wife to submit to psychological evaluation and psychiatric evaluation. Thus, the issue of the husband’s mental state was relevant in determining his fitness to parent the child. We conclude, as we did in Black, supra, that the proper resolution of the issue of the child’s custody required disclosure of the husband’s privileged records so that the best interest of the child could be determined. The circuit court’s failure to consider the husband’s counseling records is especially troubling in light of the fact that the husband’s psychiatric evaluation was not prepared in time for trial.
The wife also argues that the circuit court refused to hear other evidence concerning the husband’s mental state. The record reflects that the husband testified that he had gone to a doctor in Louisiana to discuss the child’s health issues with that doctor; however, he testified that he had left that appointment with prescribed medication for himself. The wife’s attorney asked the husband what kind of prescription he had obtained from the doctor, and other questions regarding that doctor visit, but the circuit court sustained objections made by the husband based on relevancy and the husband was not required to answer the questions. As we stated above, the mental and physical condition of a parent is relevant in a custody proceeding to determine the parent’s fitness to care for the child. Thus, we conclude that the circuit court erred in excluding evidence of the husband’s fitness to parent the child.
Accordingly, we conclude that the circuit court erred by failing to consider evidence regarding the husband’s mental state in resolving the issue of custody based on the best interests of the child.[11] Therefore, we reverse the custody determination made in the divorce judgment, and we remand the cause with instructions for the circuit court to reconsider its custody determination after conducting a hearing to consider evidence of the husband’s fitness that was improperly excluded during trial, as set forth above.
Because we have reversed the circuit court’s custody determination based on its failure to consider evidence related to the husband’s fitness to parent the child, we pretermit discussion of the wife’s alternative argument for reversal of the custody determination based on the husband’s alleged domestic violence. Furthermore, because the circuit court has been instructed to reconsider its custody determination, we also pretermit discussion of the issues raised by the wife on appeal that relate to her award of supervised visitation, the requirement that she pay child support to the husband, and the requirement that she pay one-half of the child’s noncovered medical expenses.
III. Alimony and Property Division
Next, the wife contends that the circuit court erred by failing to award her periodic alimony or to reserve jurisdiction to award her periodic alimony in the *640 future. The wife also challenges the amount and length of her award of rehabilitative alimony.
“A trial court’s determination regarding a property division and an award of alimony is entitled to a presumption of correctness. Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993). That presumption of correctness is based upon the trial court’s unique position of being able to observe the witnesses and evaluate their demeanor and credibility. Robinson v. Robinson, 795 So.2d 729 (Ala.Civ.App.2001). The issues of property division and alimony are interrelated, and they must be considered together. Albertson v. Albertson, 678 So.2d 118 (Ala.Civ.App.199[5]). A property division is not required to be equal, but it must be equitable. Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996). In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages and health; the length of the parties’ marriage; and the source, value, and type of marital property. Robinson v. Robinson, supra; Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App.1986). In addition, the trial court may also consider the conduct of the parties with regard to the breakdown of the marriage, even where the parties are divorced on the basis of incompatibility, or, as here, where the trial court failed to specify the grounds upon which it based its divorce judgment. Ex parte Drummond, 785 So.2d 358 (Ala.2000); Myrick v. Myrick, 714 So.2d 311 (Ala.Civ.App.1998); Lutz v. Lutz, supra.”
Pate v. Pate, 849 So.2d 972, 976 (Ala.Civ.App.2002).
In its judgment, the circuit court awarded the wife rehabilitative alimony in the amount of $200 a month for approximately 9 months. “This court has defined rehabilitative alimony as ‘a sub-class of periodic alimony’ that allows a spouse ‘time to reestablish a self-supporting status.’ ” Giardina v. Giardina, 987 So.2d 606, 620 (Ala.Civ.App.2008) (quoting Jeffcoat v. Jeffcoat, 628 So.2d 741, 743 (Ala.Civ.App.1993)). Because rehabilitative alimony is a sub-class of periodic alimony, the wife’s argument that the circuit court erred by failing to award her periodic alimony is erroneous. However, we will consider the wife’s argument that her rehabilitative-alimony award was inadequate and her argument that the circuit court failed to reserve the right to award permanent periodic alimony to the wife in the future.
The evidence reflected that the wife had been a homemaker throughout the parties’ 19-year marriage, except for 2 minor incidences of employment more than 13 years before trial, that the wife had been the child’s primary caregiver, and that the wife had homeschooled the child until the child started public school in August 2009. The evidence also indicated that the wife has a degree in botany. There is no evidence indicating that the wife intended to use her degree in botany to obtain employment, but there is also no evidence indicating that she could not use her degree to obtain more lucrative employment. Although there was an indication at trial that the wife had not made a sincere effort to obtain employment during the pendency of the divorce action, the evidence was undisputed that the wife had earned only $1,537 in 2009 (over a three-month period) working as a substitute teacher, while the husband had earned approximately $5,700 a month working as a professor at a university. The record also clearly indicated that the wife was required to obtain food stamps and to incur credit-card debt during the pendency of the divorce action because she was unable *641 to survive off the support provided by the husband, who had paid the mortgage on the marital residence, the utility bills for the marital residence, and other various expenses on behalf of the wife during the pendency of the divorce action. Furthermore, although the record indicated that the husband had needed the financial assistance of the child’s paternal grandparents to maintain two households during the pendency of the divorce action, according to the husband, his income exceeded his expenses at the time of trial.
Pursuant to the divorce judgment, the wife was awarded $36,655 as her portion (30%) of the husband’s vested retirement benefits,[12] one-half of the equity of the marital residence (approximately $16,000), and some specific items of personal property with an unknown value. The wife was also allowed to keep the parties’ 2008 state and federal income-tax refunds in the amount of $1,571; however, she was also ordered to pay her individual credit-card debt (approximately $4,563).[13] Although the wife was confident that she would be able to support herself after receiving six months of support from the husband, it was clear from the wife’s testimony that she believed that she could be self-supporting in that amount of time if she was living in the marital residence and the husband was paying the mortgage on the marital residence as a form of support. However, pursuant to the divorce judgment, the wife was ordered to immediately vacate the marital residence.
In Kelly v. Kelly, 892 So.2d 426 (Ala.Civ.App.2004), this court reversed a division of property and an award of alimony made in a divorce judgment because it was inequitable. In doing so, we noted that “the wife’s earning potential [did] not approach the husband’s earning potential” and “that the divorce judgment [did] not provide the wife with a home or the means of obtaining a home.” Id. at 431. In this case, although the wife could rent a home using the money she was due to receive from the equity on the marital residence and from her portion of the husband’s retirement benefits, in light of the provision in the divorce judgment that required the wife to immediately vacate the marital residence, the divorce judgment provided the wife no means to realistically obtain housing after she vacated the marital residence.[14]
Therefore, we conclude that, under the particular circumstances of this case, the circuit court’s award of alimony, in light of its division of the marital property, was inequitable. Accordingly, we reverse those parts of the divorce judgment re *642 garding the division of property and the award of rehabilitative alimony to the wife, and we remand the cause with instructions to the circuit court to adjust the award of alimony and the division of property in light of the concerns addressed in this opinion. Because we are reversing the award of alimony and the division of property in the divorce judgment, we pretermit discussion of whether the circuit court’s failure to reserve jurisdiction to award the wife permanent periodic alimony was error.[15]
IV. Attorney’s Fees
Finally, the wife argues that the circuit court erred by failing to require the husband to pay a portion of her attorney’s fees. According to the wife, at the time of trial, she had paid her attorney $4,200 and she had paid $750 toward the guardian ad litem’s fees. This court has held that “[t]he award of attorney’s fees in a divorce action is a matter within the sound discretion of the trial court, which should consider such factors as the conduct of the parties, the financial circumstances of the parties, and the outcome of the litigation.” Murphree v. Murphree, 579 So.2d 684, 637 (Ala.Civ.App.1991). Because we are reversing certain aspects of the divorce judgment and remanding the cause with instructions to the circuit court, the outcome of the divorce action is still pending at this time and is subject to change. Accordingly, we pretermit discussion of whether the circuit court exceeded its discretion by failing to award the wife an attorney’s fee in the divorce action. See Rhyne-Morris v. Morris, 671 So.2d 748, 750 (Ala.Civ.App.1995) (pretermitting discussion of the wife’s argument that the trial court erred in failing to award her attorney’s fees in a divorce action because the divorce judgment was reversed and the cause was remanded); and In re Conservatorship of V.A.H., 802 So.2d 1099, 1101 (Ala.Civ.App.2001) (when judgment was reversed and the cause was remanded, this court pretermitted consideration of the appropriateness of an award of attorney’s fees “[bjecause the substantive outcome of the case may change on remand”).

Conclusion

The judgment of the circuit court is reversed insofar as it made a determination of the child’s custody, divided the parties’ property, and awarded the wife rehabilitative alimony in the amount of $200 for 9 months. The cause is remanded with instructions to the circuit court to conduct a hearing to consider evidence of the husband’s fitness that was improperly excluded during trial, as set forth in this opinion. The circuit court is further instructed to adjust its award of alimony and its division of property in light of this opinion.
The wife is awarded an attorney fee on appeal in the amount of $1,500.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, J., concurs.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur in the result, without writings.

. The record reveals that the guardian ad litem’s "Motion for Finding of Dependency" did not comply with § 12 — 15—120(a), Ala. Code 1975, which provides that "dependency cases ... before the juvenile court shall be initiated by the filing of a petition by the juvenile court intake officer who shall receive verified complaints...." (Emphasis added.) See also § 12-15-114(a), Ala.Code 1975 ("A juvenile court shall exercise exclusive original jurisdiction of juvenile court proceedings in which a child is alleged to ... be dependent. ... Juvenile cases before the juvenile court shall be initiated through the juvenile court intake officer pursuant to this chapter.”).

. The trial judge, acting as a circuit-court judge in a divorce action, did not have jurisdiction to enter a finding of dependency. See § 12-15-114(a), Ala.Code 1975 (“A juvenile court shall exercise exclusive original jurisdiction of juvenile court proceedings in which a child is alleged ... to be dependent....”). It does not matter that the trial judge was designated as a circuit-court judge and a juvenile-court judge. See C.D.S. v. K.S.S., 963 So.2d 125, 127 n. 1 and n. 2 (Ala.Civ.App.2007) (citing former § 12 — 15—30(a), Ala.Code 1975, which was repealed by the Alabama Juvenile Justice Act, § 12-15-101 et seq., Ala.Code 1975, and replaced by § 12-15-114(a), Ala. Code 1975) (noting that a circuit-court judge, who was also designated as a juvenile-court judge, did not have subject-matter jurisdiction to enter a finding of dependency in an action filed in circuit court).

. The record on appeal contains approximately 800 pages of testimony. This opinion does not contain a full recitation of the facts set forth in the record; however, we have provided the facts necessary for context and for resolution of the wife’s appeal.

. The husband agreed to leave the courtroom during the child's testimony. The wife initially agreed to leave the courtroom during the child's testimony, but her attorney argued that he needed the wife present in the courtroom to adequately cross-examine the child. The record reflects that the guardian ad litem positioned herself between the child and the wife during the child's testimony so that the child could not see the wife.

. The wife's counsel argued during trial that the results of the husband's psychiatric evaluation were needed. The record indicates that the trial judge conducted an off-the-record discussion following the wife’s counsel’s argument. The husband's psychiatric evaluation is not in the record on appeal.

. Because we determine that the circuit court’s custody determination must be reconsidered in light of additional evidence, see discussion infra, we do not address the propriety of the circuit court’s visitation award in this opinion.

. Nothing in the guardian ad litem’s dependency petition could be construed as an at *637 tempt to invoke the emergency jurisdiction of the juvenile court. See § 12-15-138, Ala. Code 1975. However, even if we could construe anything in the guardian ad litem's dependency petition as an attempt to invoke the emergency jurisdiction of the juvenile court, the petition was not filed in the juvenile court, and the juvenile court did not purport to exercise its emergency jurisdiction by entering an "order of protection or restraint to protect the health or safety of [the] child....” § 12-15-138, Ala.Code 1975. The juvenile court was apparently content, at that time, to allow the child to remain in the custody of the wife and to allow the husband visitation with the child.

. Because we have determined that the juvenile court never obtained subject-matter jurisdiction in case no. JU-09-509.01, and because we have determined that the juvenile court "closed” case no. JU-09-509.02 without finding the child to be dependent, a future proceeding concerning the child may not be initiated in the juvenile court on the basis that the juvenile court has continuing jurisdiction pursuant to § 12-15-117(a), Ala.Code 1975. The juvenile court could properly exercise jurisdiction of the child in the future only if the jurisdiction of the juvenile court was properly invoked pursuant to the juvenile court's original jurisdiction, see §§ 12-15-114 and -115, Ala.Code 1975 (original jurisdiction), subject to all other applicable jurisdic *638 tional provisions of the Alabama Juvenile Justice Act.

. Because the circuit court retained subject-matter jurisdiction to decide the issue of custody, the fact that circuit-court judge purported to act under juvenile-court jurisdiction throughout this proceeding was harmless error.

. Section 34-26-2 provides:
"For the purpose of this chapter [Title 34, Chapter 26], the confidential relations and communications between licensed psychologists, licensed psychiatrists, or licensed psychological technicians and their clients are placed upon the same basis as those provided by law between attorney and client, and nothing in this chapter shall be construed to require any such privileged communication to be disclosed.”

. The wife, in her brief on appeal, also cites the circuit court’s refusal to admit records from the husband’s former employer. The record reflects that the circuit court sustained an objection to the admission of those records based on hearsay. The wife has presented this court with no authority to support her implicit argument that the circuit court’s refusal to accept the husband's employment records into evidence was error because the testimony concerned the husband’s mental state. See Rule 28(a)(10), Ala. R.App. P. (requiring an appellant to cite relevant legal authority to support arguments made on appeal). Accordingly, we will not consider that argument on appeal. See State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala.2005).

. The wife argues on appeal that the circuit court should have determined the value of the husband’s vested retirement benefits based on the value of the benefits at the time of trial in early 2010. However, this court has held that a trial judge may divide the value of any retirement benefits that are vested on the date the divorce action is filed. See Smith v. Smith, 836 So.2d 893, 899 (Ala.Civ.App.2002).

. The exact amount of the wife’s credit-card debt is unclear in the record. She testified that she had opened a credit-card account at Wachovia Bank, that she had purchased a bed for the child with a Sear’s department store credit card, that she had purchased blinds at a Lowe's home-improvement store, and that she had purchased a computer using a Dell credit card. The only evidence of the amount of the wife's credit-card debt was a statement from Wachovia Bank that indicated that the wife’s balance as of May 2009 (almost one year before the trial) was $4,563.

.The record does not reflect whether the husband decided to sell the marital residence or to purchase the wife’s equity in the marital residence, and there is no indication that the wife had obtained her share of the equity in the marital residence or her share of the husband’s retirement benefits at the time she was ordered to vacate the marital residence.

. But see Edwards v. Edwards, 26 So.3d 1254, 1262 (Ala.Civ.App.2009) (revérsing a divorce judgment that awarded the wife rehabilitative alimony because it failed to reserve the right to award the wife permanent periodic alimony).